Michael **CURRY** and Tammy Curry, Appellants

v.

**BANK OF AMERICA, N.A.,** Appellee.

No. 05–06–00065–CV.

Court of Appeals of Texas, Dallas.

Aug. 15, 2007.

Michael Curry, Dale L. Rose, Rodney R. Elkins, Rodney R. Elkins & Co., Dallas, TX, for Appellant.

Michael F. Hord, Michael D. Conner and Eric Scott Lipper, Hirsch & Westheimer, P.C., Houston, for Appellee.

Before Justices WRIGHT, RICHTER, and LANG.

## OPINION

Opinion By Justice RICHTER.

This appeal from cross-motions for summary judgment arises out of a suit brought by Michael and Tammy Curry seeking a declaration that their Bank of America, N.A. home equity loan and resulting lien are void because the loan fails to comply with the home equity loan provisions of the Texas Constitution. *See* TEX. CONST. art. XVI, § 50(a)(6); TEX. CIV. PRAC. & REM. CODE ANN. § 37.001–.11 (Vernon 1997 & Supp.2006). In the course of the proceedings, the trial court signed three judgments. The first one, signed October 18, 2005, dismissed the Bank's counterclaims and rendered final a September 19, 2005 summary judgment in favor of the Bank on the Currys' claims. The second one, signed November 30, 2005, reinstated the case following the November 15, 2005 inadvertent dismissal of the case for want of prosecution, vacated the November 15 order, and "closed" the case "with the final Order to Dismiss Counter–Claims." [1] The last one, signed March 30, 2006, grants the Currys' motion to modify, correct, or reform the judgment and declares the loan and lien invalid. We must now determine whether the November 30 order "revived" the October 18 order and is thus final or if the March 30 order declaring the loan invalid is the final judgment of the case. If we determine the November 30 order is a final judgment, the Currys ask us also to determine whether the summary judgment and the dismissal of the Bank's claims were proper. For the reasons that follow, we conclude the November 30 order is final and the summary judgment and order dismissing the Bank's counterclaim were proper. We vacate the March 30 order declaring the loan invalid and affirm the November 30 order.

## Background

The home equity loan provisions of the Texas Constitution detail the terms and conditions of a home equity loan and the rights and obligations of the borrower and lender. *See* TEX. CONST. art. XVI, § 50(a)(6)(A)-(Q); *Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 343 (Tex. 2001). Relevant to the appeal, these provisions require the loan to be closed at the office of the lender, an attorney, or a title company and forbid pre-payment penalty and certain acceleration clauses. *See* TEX. CONST. art. XVI, § 50(a)(6)(G),(J),(N). Additionally, these provisions require the

---

1. The parties proceeded as if the dismissal order vacated the October 18 judgment. *See Darr v. Altman*, 20 S.W.3d 802, 805 (Tex.App.- Houston [14th Dist.] 2000, no pet.) (concluding dismissal order entered during court's plenary power vacated prior final judgment).

lender to provide the borrower a copy of all loan documents signed by the borrower. *Id.* § 50(g). Under these provisions, a loan must comply with all the requirements set forth in the constitution to be a valid home equity loan and create a valid homestead lien. *See* Tex. Const. art. XVI, § 50(c); *Doody*, 49 S.W.3d at 343. A home equity loan that fails to comply with these requirements is invalid. *See* Tex. Const. art. XVI, § 50(c); *Doody*, 49 S.W.3d at 344. However, the home equity loan provisions allow a lender to "resurrect" an invalid loan by "correct[ing] the failure to comply." *See* Tex. Const. art. XVI, § 50(a)(6)(A)-(Q)(x); *In re Adams*, 307 B.R. 549, 554 (Bankr.N.D.Tex.2004); *Doody*, 49 S.W.3d at 345–47 (interpreting article XVI, § 50(a)(6)(Q)(x)). Under the "cure" provision, a lender has sixty days from the date the borrower notifies it of the non-compliance to correct the defect in the manner described. Tex. Const. art. XVI, § 50(a)(6)(Q)(x). If the lender fails to cure the defect within the sixty-day period, it forfeits the principal and interest of the loan. *Id.*

The Currys closed on the loan at issue on October 21, 2003 at Michael's place of business. Four weeks later, in a letter dated November 24, 2003, counsel for the Currys informed the Bank that he had been unsuccessful in trying to obtain a copy of the Currys' file from the closing agent and that the Currys were missing four of the documents made a part of the loan. Without specifying facts, counsel also informed the Bank that his "preliminary determination," from a review of the loan documents in the Currys' possession,[2] was that the loan was invalid because it

failed to comply with the "Texas Constitution, specifically Article XVI, Section 50." Because of the apparent non-compliance, counsel stated, the Currys were tendering payment on the loan under protest. The letter was not addressed to a particular person or department and, although the loan documents specifically required notice of non-compliance be sent to a post office box in Richmond, Virginia, the letter was addressed to a Main Street office in Dallas and copied to three additional addresses, none of which were the Richmond address.[3] After failing to receive a response from the Bank, counsel sent a similar letter to the same four addresses on January 18, 2004.

Three weeks later, on February 6, the Currys received a letter from Betty Carver, a Bank Vice–President in Richmond, Virginia. The letter, mailed to the Currys' home address, informed the Currys that "an internal review of the Bank's records" showed the Bank had failed at the time of closing to include a mandatory "Notice of Confidentiality Rights" with the loan documents. *See id.* § 50(a)(6)(Q)(v). However, it had been included at the time of recording and a copy was being enclosed for their records. The letter directed the Currys to call Carver at a certain number if they had "any questions concerning this matter."

On March 2, 2004, the Currys filed suit. Like the letters, the suit alleged generally that the loan and resulting lien did not comply with the home equity loan provisions of the constitution but did not specify how. The Currys also sent another letter

---

**2.** This included the promissory note and "Homestead Lien Contract and Deed of Trust."

**3.** The letter was sent to the following addresses: (1) the address listed at the top of the promissory note, (2) the address where the

"Homestead Lien Contract and Deed of Trust" was to be mailed upon recording, (3) the address listed on the Currys' payment coupons, and (4) the address of the Bank's closing agent's office.

that day similar to the November letter. Although the Currys had Carver as a contact person, the letter was not sent to her but was sent to the same four addresses as the previous letters. The Currys sent a final letter on March 11, 2004. Again, the letter was similar to the November letter and was sent to the same four addresses.

On May 20, 2004, after the Bank had filed its original answer and specially excepted to the Currys' petition, counsel for the Bank sent a letter to the Currys' attorney noting the Bank had provided a copy of the Currys' loan file to him and yet, despite numerous requests, the Bank still had not been informed as to the specific violations in the loan documents. As such, the Bank could not evaluate its right to cure under the home equity loan provisions. *See id.* § 50(a)(6)(Q)(x). Counsel for the Bank asked again for the specific basis of the Currys' allegations and when he failed to receive a response, followed with another letter dated June 16, 2004. In this letter, counsel for the Bank again noted he had repeatedly requested the specific factual basis for the suit and, although neither he nor the Bank had received a response, it appeared to him that the complaint stemmed from the closing of the loan at a location other than a title company, attorney's office, or the Bank. In light of this and in accordance with its right to cure, the Bank was "offer[ing] to cure [this violation and any other perceived deficiency] by providing a credit to [the Currys] on the loan in the amount of $1,000.00 and offer[ing] the right to [the Currys] to refinance the original extension of credit ... for the remaining term of the loan at no cost to [the Currys] and on the same terms, including interest, as the original extension of credit." *See id.* § 50(a)(6)(Q)(x)(f). The Currys failed to accept the offer to cure and the Bank did not tender a cure.

On December 3, 2004, the Bank counterclaimed for a declaration that it had a right to offer to cure, had cured any noncompliance by its offer to cure, and had extended a valid loan. Subsequently, on December 19, the Bank moved for summary judgment on the Currys' claims asserting that both traditional and no-evidence grounds defeated the Currys' claims as a matter of law. Specifically, the Bank asserted it was entitled to summary judgment because (1) no evidence, or in the alternative no issue of material fact, existed showing the loan and resulting lien do not comply with the home equity loan provisions of the Texas constitution; (2) no evidence, or in the alternative no issue of material fact, existed showing the Currys provided the Bank adequate notice of noncompliance; and (3) no issue of material fact existed that the Bank cured or offered to cure any "potential actionable defect."

The Currys responded on January 19, 2005 with an amended petition alleging for the first time that the loan was void because "among other things, it was not closed at a title company, an attorney's office, or at the [Bank]."[4] *See id.* § 50(a)(6)(N). Seven months later, on August 29, the Currys filed their own motion for summary judgment asserting they were entitled to judgment as a matter of law that the loan was invalid because, in addition to the closing occurring other than at an "approved" location, they had not received a copy of all the documents they had signed relating to the loan, the loan documents improperly included a penalty payment and acceleration clause, the Bank had failed to timely cure, and the Bank had failed to accept at least one tendered payment and charged an unau-

---

**4.** The amended petition did not specify any other grounds of non-compliance.

thorized late fee. *See id.* § 50(a)(6)(G),(J),(Q)(v),(x).

By order of September 19, 2005, the trial court granted, without specifying a basis, the Bank's summary judgment motion, denied the Currys' summary judgment motion, ordered the Currys take nothing, and awarded attorney's fees and court costs to the Bank pursuant to section 37.009 of the Texas Civil Practices and Remedies Code. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 37.009 (Vernon 1997) (allowing trial court to award costs and reasonable and necessary attorney's fees "as are equitable and just"). The Bank followed the summary judgment with a notice of non-suit and motion to dismiss its counterclaims, and on October 18, 2005, the trial court dismissed the Bank's counterclaims without prejudice and rendered final the summary judgment. *See Webb v. Jorns,* 488 S.W.2d 407, 408–09 (Tex.1972) (interlocutory judgment merges into final judgment and thus becomes final for purposes of appeal even if not named within final judgment); *Campbell v. Kosarek,* 44 S.W.3d 647, 649 n. 1 (Tex.App.-Dallas 2001, pet. ref'd) (same); *Thompson v. Chrysler First Bus. Credit Corp.,* 840 S.W.2d 25, 34 (Tex.App.-Dallas 1992, no writ) (partial summary judgment became final upon non-suit of defendant's claim for attorney's fees). That same day, the Currys moved to modify, correct, or reform the summary judgment. No hearing was held on this motion, but on November 15, 2005, "after [the Currys] failed to appear for trial and did not announce prior to the trial," the trial court dismissed the case for want of prosecution. This order was subsequently vacated on November 30, 2005 by order which reads in its entirety as follows:

> On November 14, 2005[sic] the plaintiff failed to appear for trial and did not announce prior to the trial. An Order to Dismiss for Want of Prosecution was entered. Because the case had already been disposed of with an order to dismiss (counterclaim) prior to trial, the Dismissal Order should not have been entered.
>
> THEREFORE, UPON the Court's Own Motion, it is HEREBY ORDERED that the Order of Dismissal for Want of Prosecution signed on November 15, 2005 is hereby vacated and that the case shall be reinstated onto the pending docket of [this] Court and closed with the final Order to Dismiss Counter-Claims of October 18, 2005.

The Currys timely appealed in January 2006 from this order and also moved again to modify, correct, or reform the summary judgment. The trial court granted this motion on March 30, 2006.

### Revival of Summary Judgment and Finality of Reinstatement Order

█ In their first issue, the Currys assert the November 30 order did not revive the summary judgment. The Currys maintain that for the summary judgment to have been revived, the November 30 order had to specifically reinstate it. Because the November 30 order referenced, but did not specifically reinstate, the October 18 order dismissing the counterclaim and did not mention the summary judgment, the Currys argue the case stood as of that date with at most no counterclaims but with their suit still pending. As such, the Currys maintain, the trial court had jurisdiction to consider its January 2006 motion to modify, correct, or reform the summary judgment and the March 30 order declaring the loan invalid is the final judgment in the case. *See Fruehauf Corp. v. Carrillo,* 848 S.W.2d 83, 84 (Tex.1993) (per curiam) (trial court has control over its judgment until it becomes final). Because they filed their notice of appeal in January 2006, two months prior to this

judgment, the Currys argue their notice of appeal was "premature." And, noting the Bank did not file a notice of appeal in this case, the Currys argue further, this judgment must stand because no appeal exists that could defeat the judgment. We disagree.[5]

An order setting aside or vacating a judgment returns the parties to the position they occupied before rendition of the judgment and leaves the case as if no judgment had been entered. *In re J.M.T.*, 999 S.W.2d 562, 563 (Tex.App.-Waco 1999, no pet.) (per curiam); *P.V. Int'l Corp. v. Turner*, 700 S.W.2d 21, 22 (Tex.App.-Dallas 1985, no writ). To ensure parties "are not made to guess what action a trial judge has taken concerning an order," courts have held that such an order is not a final judgment unless it also specifically includes language disposing of all the issues and parties in the case. *Wang v. Hsu*, 899 S.W.2d 409, 412 (Tex. App.-Houston [14th Dist.] 1995, writ denied); *P.V. Int'l*, 700 S.W.2d at 22. Likewise, an order setting aside or vacating an order that set aside or vacated another order leaves the case as if no judgment had been entered; to be final, it must either specifically dispose of all the issues and parties or reinstate the prior judgment. *Wang*, 899 S.W.2d at 412; *P.V. Int'l*, 700 S.W.2d at 22. When an order sets aside a judgment, but is otherwise silent, the trial court's jurisdiction to adjudicate the case continues. *Wang*, 899 S.W.2d at 412; *P.V. Int'l*, 700 S.W.2d at 22–23.

Here, although the November 30 order does not explicitly reinstate the October 18 order dismissing the Bank's counterclaim and rendering the summary judgment final, neither is it silent. As stated, the November 30 order "closes" the case "with the final Order to Dismiss Counter–Claims of October 18, 2005." By closing the case with the October 18 order, which operated not just to dismiss the counterclaims, but also to render the summary judgment final, the court "closed" the case with both the dismissal of the counterclaims and the summary judgment. *See Jorns*, 488 S.W.2d at 408–09; *Thompson*, 840 S.W.2d at 34. This "closing" indicates finality, which in turn indicates that an "opening" or "revival" occurred. While the trial court could certainly have preceded the language that it was "closing [the case] with the final Order to Dismiss Counter–Claims" with language that it was "reinstating" or "reviving" that order, we conclude the scope of the court's action is readily ascertainable. *Compare Consol. Underwriters v. McCauley*, 320 S.W.2d 60, 63 (Tex.Civ.App.-Beaumont 1959, writ ref'd n.r.e) (concluding judgment setting aside and vacating order of July 3, 1956 that set aside and vacated order of December 5, 1955 was final and revived December 5, 1955 where it further "ordered ... that final judgment entered in this cause on December 5, 1955, be, and the same is hereby in all things held to be valid, subsisting and unsatisfied") *with Wang*, 899 S.W.2d at 412 (concluding written notation on November 10, 1993 judgment itself setting it aside "insufficient" to revive October 14, 1993 judgment because written notation did not mention October 14 judgment) *and P.V. Int'l*, 700 S.W.2d at 23 (concluding April 29, 1985 order that set aside and vacated April 15, 1985 order that set aside December 31, 1984 did not revive December 31, 1984 judgment because April 29 order referenced April 15

---

**5.** The Bank asserts in a "cross-issue" that the March 30 judgment is void because it was rendered after the trial court's plenary power had expired. Because we necessarily make this determination in addressing the Currys' argument, we do not address this "cross-issue."

order by date only and made no mention of December 31 judgment). The Currys' contention that the November 30 order at most only reinstated the order dismissing the Bank's counterclaims is without merit.

So, too, is their contention that the final judgment in this case is the March 30 order and not the November 30 order. By closing the case with the October 18 order which both dismissed the counterclaim and made final the summary judgment, the court disposed of all the parties and issues and rendered final judgment. It then retained plenary power over the judgment at most for an additional one hundred and five days, or until March 15, 2006. *See* TEX.R. CIV. PROC. 329b. The trial court's March 30 order is outside that period and is void. *See State ex rel. Latty v. Owens*, 907 S.W.2d 484, 486 (Tex.1995) (judicial action taken after court's jurisdiction over cause has expired is a nullity). We resolve the Curry's first issue against them and, because the March 30 judgment was entered outside the court's plenary power, vacate that judgment.

### Propriety of the Summary Judgment

In their second and third issues, the Currys argue the court erred in denying their summary judgment motion and in granting the Bank's. We review de novo a trial court's ruling on a motion for summary judgment. *AIG Life Ins. Co. v. Federated Mut. Ins. Co.*, 200 S.W.3d 280, 284 (Tex.App.-Dallas 2006, pet. denied). When reviewing a traditional motion for summary judgment, we determine whether the movant met its burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R. CIV. PROC. 166a(c); *AIG Life*, 200 S.W.3d at 284. When the plaintiff is the movant, we look to see if he conclusively proved all elements of his cause of action as a matter of law. *Na-*

*tionwide Prop. and Cas. Ins. Co. v. McFarland*, 887 S.W.2d 487, 490 (Tex. App.-Dallas 1994, writ denied). When the defendant is the movant, we look to see if he conclusively negated at least one of the essential elements of the plaintiff's cause of action or conclusively established each element of an affirmative defense. *Gen. Mills Rest., Inc. v. Tx. Wings, Inc.*, 12 S.W.3d 827, 832 (Tex.App.-Dallas 2000, no pet.).

When reviewing a no-evidence motion for summary judgment, we determine whether the non-movant met its burden of bringing forth more than a scintilla of probative evidence to raise a genuine issue of material fact. TEX.R. CIV. PROC. 166a(i); *Wal–Mart Stores, Inc. v. Rodriguez*, 92 S.W.3d 502, 506 (Tex.2002). We will find "more than a scintilla of evidence" exists if the evidence allows reasonable and fair-minded people to differ in their conclusions. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex.2003).

Under either the traditional or no-evidence standard of review, we view the evidence in the light most favorable to the non-movant, disregarding all contrary evidence and inferences. *City of Keller v. Wilson*, 168 S.W.3d 802, 824–25 (Tex.2005). When both parties move for summary judgment and one is granted and one is denied, we determine all questions presented and render the judgment the trial court should have rendered. *City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 356 (Tex.2000). When the trial court does not specify the basis for its ruling, we will affirm if any ground supports the ruling. *Browning v. Prostok*, 165 S.W.3d 336, 344 (Tex.2005).

Based on the home equity loan provisions, to be entitled to a declaration that their home equity loan is invalid and entitled to summary judgment as a matter of

law, the Currys had to conclusively establish the loan failed to comply with the constitutional requirements, they noticed the Bank, and the Bank failed to timely cure upon being noticed. *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(x), (c); Tex. Civ. Prac. & Rem.Code Ann. §§ 37.001–.011 (providing for declaratory actions); *Adams*, 307 B.R. at 554. No dispute exists that the loan failed to comply with at least one requirement—that it be closed at the office of the lender, an attorney, or a title company—nor that the Bank offered to cure this defect, as well as any other defect, on June 16, 2004, but did not tender the cure. As such, whether the Currys met their burden turns on whether they provided the Bank notice, and if they did, whether the Bank's offer to cure fulfilled its obligation to cure. In making this determination, we construe the home equity loan provisions together giving effect to their plain language and harmonizing them if possible to avoid rendering any provision meaningless or inoperative. *Doody*, 49 S.W.3d at 344.

■ Applying the appropriate standard, we conclude the Currys failed to meet their burden because they did not conclusively establish they noticed the Bank. The Currys maintain they satisfied the notice requirement on November 24, 2003 when the first of their four letters was sent.[6] In response, the Bank argues in part, as it did in its motion for summary judgment, that the letter failed to satisfy the notice requirement because it did not specify how the loan was non-compliant.

As stated, the letter informed the Bank that it was counsel's "preliminary determination that the lien ... does not comply with the Texas Constitution, specifically Article XVI, Section 50, and is invalid." The letter, however, did not contain any factual basis or details in support of this "preliminary determination." Although the home equity loan provisions are silent as to the extent of notice the borrower must give, we conclude the Currys needed to do more than make a general allegation and had to describe how the loan is non-compliant. We find support for our conclusion in the cure provision itself which specifies how certain defects are to be cured. *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(x); *Doody*, 49 S.W.3d at 344. To determine how to cure its non-compliance, the lender must be aware of what that non-compliance is. Although a lender could certainly comb through the loan documents and the home equity loan provisions to determine the defect, it would defeat and render meaningless the requirement that the borrower notify the lender of defects if the borrower needed to merely state, without detail, that the loan was infirm.

Our conclusion is consistent with section 153.91 of title 7 of the Texas Administrative Code. This section is one of six sections adopting the interpretation of the cure provision by the Finance Commission of Texas and the Texas Credit Union Commission, the agencies responsible for interpreting the home equity loan provisions. *See* Tex. Const. art. XVI, section 50(u)

---

**6.** The Currys also assert the notice requirement may have been satisfied as early as the closing date through the imputed knowledge of the Bank's loan officer that the closing did not occur at a permissible location and the loan documents contained impermissible provisions. The Currys, however, did not raise this in their motion for summary judgment and cannot now rely on it to show the court

erred in denying their motion. *See Stiles v. Resolution Trust Corp.*, 867 S.W.2d 24, 26 (Tex.1993). We note, nonetheless, that by its very own terms, the cure provision is triggered not upon the lender's awareness or knowledge of non-compliance but upon notice *by the borrower* of the non-compliance. *See* Tex. Const. art. XVI, § 50(a)(6)(Q)(x).

(providing that the legislature may designate one or more state agencies the power to interpret the home equity loan provisions, among other constitutional provisions concerning the homestead); TEX. FIN. CODE ANN. §§ 11.308, 15.413 (Vernon Supp. 2006) (providing that the Credit Union Commission and Finance Commission of Texas, respectively, may interpret the home equity loan provisions upon request or on its own motion). Although section 153.91 was enacted and became effective after the Currys filed suit, we note it provides that notice is adequate under the cure provision if it "include[s] a reasonable description of the alleged failure to comply." 7 TEX. ADMIN. CODE § 153.91(a)(3) (2004). The Currys' November 24 letter containing no factual basis or details is inadequate and their contention that it satisfied the notice requirement is without merit. Because the Currys failed to conclusively establish they notified the Bank and the Bank conclusively negated this element, they have failed to satisfy their burden and we do not need to address whether the Bank's offer to cure satisfied its obligation to cure. We conclude the trial court did not err in denying the Currys' summary judgment motion and in granting the Bank's. *Prostok,* 165 S.W.3d at 344. We resolve the Currys' second and third issues against them.

### Propriety of the Order Dismissing the Bank's Counterclaim

 In their fourth issue, the Currys contend the trial court erred in dismissing the Bank's counterclaims without prejudice after having granted the Bank affirmative relief on its counterclaim for attorney's fees in the summary judgment order. Citing *Hyundai Motor Co. v. Alvarado,* 892 S.W.2d 853 (Tex.1995) and *Albert v. Albert,* 377 S.W.2d 772 (Tex.App.-San Antonio 1964, writ ref'd n.r.e), the Currys maintain that if a party who is granted affirmative relief on one of its claims non-suits the remaining claims, the result is a dismissal of the entire suit with prejudice, unless the order granting the affirmative relief is set aside. Because the trial court did not set aside the Bank's award of attorney's fees prior to dismissing the Bank's remaining counterclaims without prejudice, the Currys maintain the trial court erred. The Curry's argument, however, is misguided.

*Alvarado* holds that when a defendant obtains a partial summary judgment on certain of the plaintiff's causes of action and the plaintiff subsequently non-suits the whole case, the non-suit results in dismissal with prejudice as to the causes of action adjudicated in the partial summary judgment. 892 S.W.2d at 854. Similarly, *Albert* holds that a defendant who tries his cross-action but is unsuccessful cannot move, post-judgment, to non-suit the cross-action. 377 S.W.2d at 773. The import of these cases is that a party who has had his claims adjudicated unsuccessfully cannot later non-suit his claims to avoid the judgment. *See Alvarado,* 892 S.W.2d at 855.

Here, the Bank did not non-suit its counterclaims after having them adjudicated unsuccessfully. Nor, as the Bank points out, did it even have its counterclaims adjudicated. Although it sought an award of attorney's fees in its counterclaims, the Bank also sought an award of fees as the prevailing party in the Currys' declaratory judgment action. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 37.009. It was on this basis that it requested them in its motion for summary judgment and it was on this basis that the trial court specifically awarded them. We resolve the Currys' fourth issue against them.

Having concluded the November 30 order is final and the trial court's summary judgment and order dismissing the Bank's

counterclaims were proper, we vacate the trial court's March 30, 2006 order declaring the loan invalid and affirm the trial court's November 30 order of reinstatement and closing the case.