# NO. 12-11-00151-CV

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *FRANK KEATHLEY AND MELISSA KEATHLEY, APPELLANTS* | § | *APPEAL FROM THE* |
| *V.* | § | *COUNTY COURT AT LAW #3* |
| *CORBITT BAKER, APPELLEE* | § | *SMITH COUNTY, TEXAS* |

## *MEMORANDUM OPINION*

Frank and Melissa Keathley appeal from an adverse judgment rendered on the jury's verdict in favor of Corbitt Baker in the Keathleys' suit arising from a real estate contract. In six issues, the Keathleys contend the trial court erroneously vacated a prior judgment, awarded attorney's fees to Baker, failed to award attorney's fees to the Keathleys, submitted certain jury questions, and directed a verdict against them on their fraud claims. We suggest a partial remittitur of attorney's fees and otherwise affirm the trial court's judgment.

## BACKGROUND

In 2003, Baker's mother, Ruth, entered into a residential real estate listing agreement with Carroll and Molly Bobo, doing business as United Country Bobo Realty, to sell her home. After her death in early 2004, Baker agreed to sell the home to the Keathleys and entered into a residential real estate contract with them. The title policy commitment revealed that title to the home was held by The Bobby H. Baker and Ruth E. Baker Revocable Living Trust. The title company would not issue a title policy on the house unless Baker's father and brother signed the deed conveying the house to the Keathleys. Baker's father and brother refused to sign. The Keathleys, unaware that Baker was having trouble obtaining clear title, sold their home, secured

financing, and notified Baker that they were ready to close by the June 1, 2004 deadline stated in the sales contract. The closing did not occur, and the Keathleys purchased a different home in September 2004. On January 5, 2005, the Keathleys sent Baker notice of their Deceptive Trade Practices Act (DTPA) claim against him, alleging $45,000.00 in damages resulting from the fact that the sale did not close. They requested settlement of the dispute but alluded to their option of filing a lawsuit.

Baker filed a declaratory judgment action to establish his title to the property and, on September 16, 2005, he obtained a judgment establishing that he had clear title. On January 31, 2006, Baker informed the Keathleys that he had cured the objections in the title commitment and was prepared to close on the contract for the sale of the home in seven days.

On February 3, 2006, the Keathleys filed suit against Baker and the Bobos, alleging violations of the DTPA, breach of contract, common law fraud, statutory fraud, and negligent misrepresentation. Baker filed a counterclaim against the Keathleys, alleging breach of contract for failing or refusing to close in accordance with the contract once he had cured the title objections. Baker and the Bobos filed motions for summary judgment, which were granted. On September 20, 2007, the trial court rendered a take nothing judgment against the Keathleys, and awarded Baker and the Bobos their attorney's fees.[1] The Keathleys appealed that judgment. On appeal, we affirmed the judgment that the Keathleys take nothing against Baker and the Bobos on their DTPA and negligent misrepresentation causes of action. We reversed the trial court's judgment regarding the Keathleys' breach of contract, common law fraud, and statutory fraud causes of action against Baker and the Bobos, and its award of attorney's fees, and remanded the case to the trial court for further proceedings. *Keathley v. Baker*, No. 12-07-477-CV, 2009 Tex. App. LEXIS 4957 (Tex. App.–Tyler June 30, 2009, no pet.).

On remand, the Keathleys elected not to pursue their common law fraud claim, and the trial court directed a verdict in favor of Baker and the Bobos on the Keathleys' statutory fraud claim. The breach of contract claim was submitted to the jury. Based on the jury's verdict, on March 8, 2011, the trial court rendered a take nothing judgment in favor of Baker and the Bobos and awarded attorney's fees to Baker. On April 12, 2011, the trial court signed a second final

---

[1] Although the judgment does not specifically mention Baker's counterclaim for breach of contract, the judgment contains a Mother Hubbard clause denying all relief not expressly granted. Further, the judgment includes language that indicates finality by stating that "[t]his judgment finally disposes of all parties' claims and is appealable."

judgment, purportedly incorporating the jury verdict, but rendering judgment for the Keathleys and awarding them attorney's fees. On April 18, 2011, the court signed an order vacating the final judgment erroneously entered on April 12, 2011. The April 18 order provides that the March 8, 2011 judgment correctly reflects the judgment of the court based upon the jury's verdict. The trial court later severed the Keathleys' case against the Bobos from their case against Baker. This appeal involves only the claims against Baker.

## FINAL JUDGMENT

In their first and second issues, the Keathleys assert that the trial court erred in signing the April 18, 2011 order vacating the April 12 judgment. They contend the April 12 judgment was proper because they were the prevailing parties "under the pleadings, the nature of the case, the evidence and the verdict pursuant to Rule 301." The Keathleys argue that they are the prevailing parties because the jury found that Baker breached the contract and they were entitled, as a matter of law, to judgment for the $2,000.00 in earnest money they had deposited with Landmark Title as damages for the breach. They further argue that the April 18 order cannot reinstate the March 8 judgment because the March 8 judgment had been vacated under Texas Rule of Civil Procedure 329b. The Keathleys concede that the trial court signed each of the documents while it had plenary power over the case. They assert that the April 18 judgment is the final judgment to be addressed in this appeal. However, they contend, that judgment should be reversed and judgment should be rendered reflecting the terms of the April 12 judgment.

### Prevailing Party

The Keathleys begin by arguing that the April 12 judgment in their favor should stand because they were the prevailing parties. We disagree. A plaintiff must receive some relief on the merits on his claim before he can be said to prevail. *Intercontinental Group P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 654 (Tex. 2009). Whatever relief the plaintiff secures must directly benefit him at the time of the judgment. *Id*. A plaintiff "prevails" when actual relief on the merits of his claim materially alters the legal relationship between the parties by modifying the defendant's behavior in a way that directly benefits the plaintiff. *Id*. The jury determined that Baker failed to comply with the contract. It also determined, however, that, pursuant to the terms of the contract, the contract terminated because the property did not satisfy the lender's underwriting requirements for the loan and objections to defects to title were not

3

cured within fifteen days after Baker received the objections. Accordingly, the jury was instructed that, based on those findings, they were not to address the question of compensation to the Keathleys for damages. Even if the jury's finding is equivalent to a finding of breach, a stand-alone finding on breach confers no benefit whatsoever. *Id*. at 655. The Keathleys recovered no damages, and secured no declaratory or injunctive relief. They received nothing of value of any kind. *See id*.

We are also not persuaded by the Keathleys' earnest money argument. Earnest money is a deposit made by the buyer with an escrow agent to bind a sale of real property. *See Cowman v. Allen Monuments, Inc.*, 500 S.W.2d 223, 225 (Tex. Civ. App.–Texarkana 1973, no writ). If the buyer breaches the contract, the seller may retain this earnest money as liquidated damages. *Id*. Here, the contract provided that, if objections to title defects are not cured within the fifteen day period, the contract would terminate and the Keathleys' earnest money would be refunded. There is no question that the Keathleys were entitled to a refund of their earnest money based on the terms of the contract. However, there is no showing that the Keathleys asked for the return of their earnest money or that Baker unlawfully withheld it. Presumably, had the Keathleys asked Landmark Title to return their earnest money, the title company would have done so. Moreover, the contract provides that, if the seller defaults, the buyer may "(a) enforce specific performance, seek such other relief as may be provided by law, or both, or (b) terminate this contract and receive the earnest money, thereby releasing both parties from this contract." Frank Keathley testified that, by filing this lawsuit, he is seeking other remedies. As the contract gave him the option of seeking the return of his earnest money or seeking other remedies, the Keathleys' failure to obtain the return of their earnest money was their choice under the terms of the contract. The earnest money does not constitute breach of contract damages. Accordingly, the Keathleys are not the prevailing parties and the April 12 judgment is not an accurate reflection of the evidence and the verdict. *See Intercontinental Group P'ship*, 295 S.W.3d at 655.

**Validity of April 18 Order**

The Keathleys' argument that the March 8 judgment cannot be reinstated because it was vacated is essentially a complaint about the form of the April 18 order. While it has plenary power, the trial court can vacate, modify, correct, or reform its judgment. *See* TEX. R. CIV. P.

4

329b(d), (e).  The April 18 order is entitled "Order Vacating Final Judgment Erroneously Entered April 12, 2011."  The body of the order states in its entirety:

> On this _____ day of  4-13, 2011 came to be considered by the Court the mistaken signing and entry of a second "Final Judgment" in this case on or about April 12, 2011.  The Court had previously entered a Final Judgment in this case on March 8, 2011.
>
> On the 12th day of April, 2011, the Court erroneously entered a second "Final Judgment" that substantially differed from the one entered on March 8, 2011.
>
> The Court finds that it is in the interest of justice that the Final Judgment entered April 12, 2011 be and is hereby VACATED in its entirety.
>
> The Final Judgment entered by this Court on March 8, 2011 (attached hereto as Exhibit "A") correctly reflects the judgment of this Court based upon the verdict of the jury received and accepted by the Court at the conclusion of the trial.

Generally speaking, if a judgment is set aside, the cause stands as if there has been no final judgment.  *McCauley v. Consol. Underwriters*, 304 S.W.2d 265, 265 (Tex. 1957) (per curiam).  When a judgment has been set aside, neither that judgment nor any other former judgment in the case ever again becomes the judgment of the court unless the trial court expressly reinstates it and, in effect, renders a new judgment on the later date.  *P.V. Internat'l Corp. v. Turner, Mason, and Solomon*, 700 S.W.2d 21, 22 (Tex. App.–Dallas 1985, writ denied).  Here, the April 18 order states that the March 8 judgment "correctly reflects the judgment of this Court."  We conclude that the language used in the April 18 order, together with the court's act of physically attaching the March 8 judgment to the order and referencing the attachment, has the same effect as use of the word "reinstate" in the new order.  *See Curry v. Bank of Am., N.A.*, 232 S.W.3d 345, 351 (Tex. App.–Dallas 2007, pet. denied) (where trial court's order did not explicitly reinstate prior order, appellate court interpreted language in order to conclude trial court had done so); *Consol. Underwriters v. McCauley*, 320 S.W.2d 60, 63-64 (Tex. Civ. App.–Beaumont 1959, writ ref'd n.r.e.) (holding trial court's September 27, 1957 order vacating a July 3, 1956 order revived the December 5, 1955 judgment when trial court ordered "that final judgment entered in this cause on December 5, 1955, be, and the same is hereby in all things held to be valid, subsisting and unsatisfied").  We conclude that the April 18 order reinstated the March 8 judgment.  We overrule the Keathleys' first and second issues.

In their third and fourth issues, the Keathleys complain of the attorney's fee awarded to Baker and the failure to award attorney's fees to them. They assert that there was no legal or factual basis for an award of attorney's fees to Baker. Specifically, they argue that there is no basis for awarding attorney's fees to Baker on the noncontract issues because the Texas Civil Practice and Remedies Code does not allow a party to recover attorney's fees for defending against a contract claim. Further, they argue that the jury's answer was not supported by the evidence and was against the great weight and preponderance of the evidence with respect to the contract claims. Additionally, they assert that the jury found that Baker breached the contract and therefore he cannot be the prevailing party. Finally, they assert that the trial court erred in failing to grant judgment in their favor for attorney's fees because they were the prevailing parties and the jury's answer to Question 5, finding that the Keathleys were not entitled to any award for attorney's fees, was against the great weight and preponderance of the evidence.

## Standard of Review

When a party is attacking the legal sufficiency of the evidence supporting a finding on an issue for which he did not have the burden of proof, he must show that no evidence supports the finding. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 215 (Tex. 2011). Evidence is legally sufficient if it would enable reasonable and fair-minded people to reach the verdict under review. *Id*. We credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not. *Id*.

If a party is attacking the factual sufficiency of the evidence to support an adverse finding on an issue on which the other party had the burden of proof, the attacking party must demonstrate that there is insufficient evidence to support the adverse finding. *Capps v. Nexion Health at Southwood, Inc.*, 349 S.W.3d 849, 855 (Tex. App.–Tyler 2011, no pet). The verdict should be set aside only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). The reviewing court may not substitute its opinion for that of the jury, as it is the jury's role to judge the credibility of witnesses, to assign the weight afforded their testimony, and to resolve inconsistencies within or conflicts among the witnesses' testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003); *Ford v. Panhandle & Santa Fe Ry. Co.*, 252 S.W.2d 561, 563 (Tex. 1952).

**Applicable Law**

Texas law allows recovery of attorney's fees if authorized by statute or contract. ***Tony Gullo Motors I, L.P. v. Chapa***, 212 S.W.3d 299, 311 (Tex. 2006). The legislature has provided that a party who prevails on a breach of contract claim may recover his reasonable attorney's fees. TEX. CIV. PRAC. & REM. CODE ANN. § 38.001(8) (West 2008). The reasonableness of an attorney's fee award is a question of fact and must be supported by competent evidence. ***In re M.A.N.M.***, 231 S.W.3d 562, 567 (Tex. App.–Dallas 2007, no pet.). There should be evidence of time spent by the attorney on the case, the nature of the preparation, the complexity of the case, the experience of the attorney, and the prevailing hourly rates. ***Id***. The court may also consider the entire record and the common knowledge of the lawyers and judges. ***Id***.

**Discussion**

Baker agrees that Section 38.001 of the Texas Civil Practice and Remedies Code does not apply here as authority for his attorney's fee award. He relies on the terms of the contract, and we agree that the contract controls. The contract states that "[t]he prevailing party in any legal proceeding related to this contract is entitled to recover reasonable attorney's fees and all costs of such proceeding incurred by the prevailing party." As explained above, Baker was the prevailing party. Accordingly, the jury's finding in answer to Question 5 that the Keathleys were entitled to an award of zero for attorney's fees was correct because they were not the prevailing parties. *See **Intercontinental Group P'ship***, 295 S.W.3d at 662. We overrule the Keathleys' fourth issue.

Accordingly, Baker, as the prevailing party, is entitled to recover his reasonable attorney's fees incurred "in any legal proceeding related to [the] contract." All of the Keathleys' claims against Baker related to the contract. Therefore, he is entitled to proven reasonable attorney's fees. *See **Robbins v. Capozzi***, 100 S.W.3d 18, 27 (Tex. App.–Tyler 2002, no pet.).

Baker's counsel testified that he is familiar with the reasonable and necessary charges for legal services in Smith County. He testified as to his experience, the nature of his work on the case, the time he spent working on the case, and his hourly rates. He testified that the total amount of legal fees incurred for representing Baker up through the trial of this matter is $65,344.00. Additionally, he specified that, out of that total, $23,240.00 is attributable to work on the DTPA claims, $38,073.00 for work on the negligent misrepresentation claim, $17,204.00 for work on the fraud claims, and $21,027.00 for work on the breach of contract claim. He also testified that out of pocket expenses were $2,209.00. He further testified that a fair fee for an

appeal to the intermediate court of appeals is $7,000.00 and the cost for an appeal to the supreme court would be $10,000.00. The jury awarded Baker $70,000.00 in attorney's fees for "preparation and trial," $10,000.00 for an appeal to this court, and $15,000.00 for an appeal to the Texas Supreme Court.

Although the sum of the specific amounts identified for each claim far exceeds the "total" testified to by counsel, it was the jury's duty to resolve that conflict within his testimony. ***Ford***, 252 S.W.2d at 563. There is sufficient evidence to support the award of $70,000.00 in attorney's fees for "preparation and trial." *See **In re M.A.N.M.***, 231 S.W.3d at 567. However, the amounts awarded for appeals exceed the amounts testified to as necessary for the appeals. Thus, the evidence is not factually sufficient to support the awards for appeals to this court or the Texas Supreme Court. We sustain the Keathleys' third issue in part and overrule it in part.

## THE JURY CHARGE

In their fifth issue, the Keathleys attack the jury charge as follows:

> The trial court erred by submitting Jury Question No. 4 conditioned on a "Yes" answer to Jury Question No. 1 and a "No" answer to Jury Question No. 2 and Jury Question No. 3 because the conditional submission informed the jury of the effect of its answers, because Jury Questions No. 2 and No. 3 were comments on the weight of the evidence and were questions of law not of fact and because there was sufficient evidence to raise a question of fact for the jury and because Frank Keathley and Melissa Keathley were entitled to the return of their escrow deposit under the Contract, as a matter of law.

The Keathleys have not properly briefed this issue. An appellate brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record. TEX. R. APP. P. 38.1(i). Rule 38 requires a party to provide such a discussion of the facts and the authorities relied upon as may be requisite to maintain the point at issue. ***Tesoro Petroleum Corp. v. Nabors Drilling USA, Inc.***, 106 S.W.3d 118, 128 (Tex. App.– Houston [1st Dist.] 2002, pet. denied). "This is not done by merely uttering brief conclusory statements, unsupported by legal citations." ***Id***. The Keathleys refer generally to Pattern Jury Charge 101.21 as the only authority in support of the five arguments they allude to in the two paragraphs in which they present this issue. This is insufficient to comply with Rule 38.1(i). The Keathleys have waived any error, and we overrule issue five.

In their sixth issue, the Keathleys contend the trial court erred in directing a verdict against them on their fraud claims because there was evidence raising an issue of fact and the claims should have been submitted to the jury.[2]  They assert that Baker gave them only limited information regarding the extent of the problems with the property's title and that they presented evidence that Baker committed fraud by nondisclosure.  Therefore, they argue, "there were issues of fact relating to the nature of the disclosures by Baker and whether he failed to correct or add to those disclosures to let Keathley know the seriousness of the title problems and his family dispute that resulted in Baker's breach of the Contract."

**Standard of Review**

A directed verdict is warranted when the evidence is such that no other verdict can be rendered and the moving party is entitled, as a matter of law, to judgment.  *White v. White*, 172 S.W.2d 295, 296 (Tex. 1943).  A defendant establishes a right to a directed verdict when a plaintiff fails to present evidence raising a fact issue essential to the plaintiff's right of recovery or when the plaintiff admits, or the evidence conclusively establishes, a defense to the plaintiff's cause of action.  *Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000).

In reviewing a trial court's directed verdict, an appellate court follows the standards for assessing the legal sufficiency of the evidence.  *City of Keller v. Wilson*, 168 S.W.3d 802, 823-827 (Tex. 2005).  We examine the evidence in the light most favorable to the person suffering an adverse judgment and decide whether there is any evidence of probative value to raise an issue of material fact on the question presented.  *Exxon Corp.*, 348 S.W.3d at 217.  We credit favorable evidence if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not.  *City of Keller*, 168 S.W.3d at 807.

**Applicable Law**

Statutory fraud in a transaction involving real estate consists of a (1) false representation of a past or existing material fact, when the false representation is made to a person for the purpose of inducing that person to enter into a contract and relied on by that person in entering into that contract; or (2) a false promise to do an act, when the false promise is material, made

---

[2] The Keathleys reference "their fraud claims" and assert that the trial court granted Baker's directed verdict on their common law and statutory fraud claims.  However, the record shows that they elected not to pursue their common law fraud claim during the course of the trial.  The trial court directed a verdict against the Keathleys on their statutory fraud claim only.

with the intention of not fulfilling it, made to a person for the purpose of inducing that person to enter into a contract, and relied on by that person in entering into that contract. TEX. BUS. & COM. CODE ANN. § 27.01(a) (West 2009). Silence is equivalent to a false representation where circumstances impose a duty to speak and one nevertheless deliberately remains silent. *Lesikar v. Rappeport*, 33 S.W.3d 282, 299 (Tex. App.–Texarkana 2000, pet. denied). In other words, for there to be fraud by nondisclosure, there must be a duty to disclose. *Id*. A duty to disclose may arise in four situations: (1) where there is a special or fiduciary relationship; (2) where one voluntarily discloses partial information, but fails to disclose the whole truth; (3) where one makes a representation and fails to disclose new information that makes the earlier representation misleading or untrue; or (4) where one makes a partial disclosure and conveys a false impression. *Id*.

**Discussion**

The Keathleys admit that they knew there was a probate issue with a family trust involved and that other Baker family members had retained legal counsel. They assert, however, that they did not know the nature of the dispute or that it would cause a problem with closing. They argue that the issue is whether Baker should have informed them of changes that presented more serious problems for closing than what had been indicated. In spite of a duty to disclose, they argue, Baker failed to disclose the title dispute or new information regarding the title dispute that made the earlier representations misleading or untrue. In making their argument, the Keathleys ignore some of the elements of statutory fraud.

The record shows that Ruth Baker owned the home, the Keathleys made their initial offer on the home after Ruth Baker died, and they were aware of her death. According to Frank Keathley, Baker told the Keathleys that he would inherit the property and acted as if he had the authority to sell the house. The Keathleys suggested leasing the house until Baker could obtain legal title. However, they did not pursue leasing because the Keathleys and Baker agreed that the Keathleys would be able to sell their home and Baker "would be through with whatever he needed to do to be ready to close by the closing date." Their offer included a provision stating that the transaction would close when the home sells and "subject property is out of probate." The offer also provided for monetary compensation to the Keathleys in the event "closing is extended to probate." On February 10, 2004, Baker responded as "seller," rejecting that offer, and the Keathleys presented a second offer that Baker agreed to as "seller." The agreed upon

closing date was June 1, 2004. Thus, although Baker presented himself as one with authority to sell, he disclosed the fact that he would not have legal title until after conclusion of the appropriate legal proceedings. The Keathleys understood that process might extend beyond June 1, 2004.

The contract was signed in mid-February, and the receipt for the earnest money is dated February 18, 2004. The parties received the preliminary title commitment on February 27, which was when all parties learned of the trust. It was later verified that Baker was to receive the house at issue under the terms of the trust. Since Baker did not know about the trust at the time they entered into the contract, he could not have knowingly misrepresented the effect the trust would have on his ability to close on time. Accordingly, there is no evidence of a false representation regarding Baker's claim that he was to get the house after his mother died or that he would be able to close on June 1, 2004. And thus there is no evidence of a false representation prior to entering into the contract. Further, if Baker had said he would be able to close on June 1, 2004, that would not be a representation of a past or existing material fact as required by Section 27.01(a)(1).

Likewise, there is no evidence that Baker did not intend to fulfill his promise to obtain title and close on June 1, 2004. Consequently, such a statement, if made, does not violate Section 27.01(a)(2)'s requirement of a false promise made with the intention of not fulfilling it. Therefore, there is no evidence that Baker fraudulently induced the Keathleys to agree to buy the property, and no evidence that the Keathleys relied on a false representation in entering into the contract.

Next, we address the Keathleys' assertion that Baker failed to disclose the title dispute or new information regarding the title dispute that made the earlier representation that closing would take place on June 1 misleading or untrue. For purposes of our discussion, we will assume without deciding that Baker had a duty to disclose new information relating to his ability to close on June 1, 2004. To the extent the law requires disclosure, it is fact, not speculation as to the future, that must be disclosed. *See Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 370-71 (Tex. App.–Houston [1st Dist.] 2012) (op on reh'g), *pet. granted, judgm't set aside, remanded by agr.,* 2013 Tex. LEXIS 20 (Jan. 11, 2013). Even if Baker told the Keathleys that, in his opinion, he could quickly clear up the title problems, his opinion cannot support an action for fraud. *See Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995). Finally, even if

11

Baker came into possession of information after they entered the contract that should have been disclosed, that information cannot form the basis of a statutory fraud claim because it could not have been used for the purpose of inducing the Keathleys to enter into the contract. TEX. BUS. & COM. CODE ANN. § 27.01; *see also* **Marcontell v. Jacoby**, 260 S.W.3d 686, 691 (Tex. App.–Dallas 2008, no pet.) (alleged misrepresentations occurring after contract is signed, but before closing, could not have induced contract).

The Keathleys failed to raise a fact issue on their claim for statutory fraud. Therefore, the trial court did not err in granting Baker's motion for directed verdict on that claim. *See* **Prudential Ins. Co.**, 29 S.W.3d at 77. We overrule the Keathleys' sixth issue.

## DISPOSITION

We *affirm* the trial court's judgment with respect to attorney's fees in the amount of $70,000.00 for preparation and trial. Because the evidence does not support the $25,000.00 award for appellate attorney's fees, we suggest a *remittitur* of $8,000.000. If within fifteen days after this court's opinion, Baker files in this court a remittitur of $8,000.00 of the appellate attorney's fees awarded in the trial court's judgment, then the trial court's judgment will be reformed and affirmed as to $17,000.00 in appellate attorney's fees. If the suggested remittitur is not timely filed, the part of the trial court's judgment awarding appellate attorney's fees will be reversed and the issue of attorney's fees will be remanded to the trial court for a new trial. *See* TEX. R. APP. P. 46.3; **Stukes v. Bachmeyer**, 249 S.W.3d 461, 470 (Tex. App.–Eastland 2007, no pet.).

In all other respects, we *affirm* the trial court's judgment.

**BRIAN HOYLE**
Justice

Opinion delivered April 3, 2013.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*

(PUBLISH)

12



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**APRIL 3, 2013**

**NO. 12-11-00151-CV**

**FRANK KEATHLEY AND MELISSA KEATHLEY,**
Appellants
V.
**CORBITT BAKER,**
Appellee

Appeal from the County Court at Law #3

of Smith County, Texas. (Tr.Ct.No. 51,959-B)

THIS CAUSE came to be heard on the oral arguments, appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was error in the judgment of the trial court below.

It is therefore ORDERED, ADJUDGED, AND DECREED that the award of $25,000.00 in appellate attorney's fees to Corbitt Baker was excessive, and in order to obtain an affirmance of the appellate attorney's fee award, Appellee Corbitt Baker must file a **remittitur** in the amount of $8,000.00 within fifteen days of the date of this judgment; otherwise, the trial court's judgment as to appellate attorney's fees will be reversed and the issue of attorney's fees will be remanded for a new trial.

It is further ORDERED, ADJUDGED and DECREED that, in all other respects, the trial court's judgment is **affirmed**; all costs of this appeal are hereby assessed

against the Appellants, **FRANK KEATHLEY AND MELISSA KEATHLEY**, for which execution may issue; and that this decision be certified to the court below for observance.

Brian Hoyle, Justice.
*Panel consisted of Worthen, C.J., Griffith, J., and Hoyle, J.*