**Opinion issued December 6, 2018**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-16-00589-CV**

———————————

**WINNIE STACEY ALWAZZAN, Appellant**

**V.**

**ISA ALI ALWAZZAN AND INTERNATIONAL AGENCIES CO., LTD.,
Appellees**

**On Appeal from the 306th District Court
Galveston County, Texas
Trial Court Case No. 13-FD-0848**

## DISSENTING OPINION

This case involves four divorce actions between the parties to the same marriage filed consecutively in three different counties. I agree with the majority opinion that petitioner Winnie Stacey Alwazzan (Winnie) failed to satisfy the Family Code's

statutory residency requirement for maintaining a divorce action against her husband Isa Ali Alwazzan (Isa) and a Bahrani company owned in part by Isa's family, International Agencies Co., Ltd. (IACL), in Galveston County; thus, the trial court correctly dismissed the underlying Galveston County divorce action on that basis. I also agree with the majority opinion that evidence supported the trial court's sanctions award against Winnie.

However, failure to establish residency is not a jurisdictional issue. I would hold that the Harris County district court had both subject-matter jurisdiction and personal jurisdiction over all the parties, that the Harris County divorce was final, and that subject-matter jurisdiction not only did not attach in Galveston County but could not attach, and therefore that the Galveston County court correctly entered judgment dismissing the case for lack of jurisdiction. I would transfer this case to Harris County for entry of the decree.

The majority opinion, by contrast, reverses both of the Galveston County court's jurisdictional holdings. In the majority's opinion, the trial court did have subject-matter jurisdiction over the divorce action and the issue of the court's personal jurisdiction over IACL was never reached and remains pending in Galveston County. Accordingly, it holds that the trial court erred both by granting Isa's plea to the jurisdiction on the basis of lack of subject-matter jurisdiction and by finding that it lacked personal jurisdiction over both Isa and IACL.

2

I disagree on all these matters. I believe the majority opinion inaccurately represents the proceedings and record below, and that the opinion is internally inconsistent and incompatible with the facts of the case and the law. Therefore, I agree with the majority opinion only insofar as it holds that dismissal was proper on statutory grounds and affirms the sanctions award against Winnie, which remained pending after dismissal of the action on jurisdictional grounds and was supported by evidence before the Galveston County court.

In my view, the majority errs in holding that the Galveston County trial court properly granted Isa's plea to the jurisdiction based on Winnie's failure to meet the statutory residency requirement, which is a non-jurisdictional requirement, as the majority acknowledges. It further errs in holding subject-matter jurisdiction still inherently remained in the Galveston County court, requiring only that Winnie establish residency there at some point. And it errs in leaving pending in that court IACL's special appearance and bill of review. The majority opinion and judgment thus violate Texas Rule of Appellate Procedure 47.1, which requires the court of appeals to hand down a written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal. *See* TEX. R. APP. P. 47.1.

The majority makes other mistakes. It states in its fact section that because Winnie objected to the trial court's hearing IACL's bill of review, pending in the same court in a separately-filed action under the pendent jurisdiction afforded by the filing

of Winnie's action in Galveston County, and because that bill of review had a separate cause number, the Galveston County court did not hear the bill of review. Yet the record shows on its face that the Galveston County court did hear the bill of review. The majority also states that IACL's special appearance was not heard and is not pending before this court in this appeal, even though (1) IACL filed a special appearance *both* in the underlying action *and* in the bill of review; (2) IACL's appearance at the July 19, 2016 hearing on Isa's plea to the jurisdiction was expressly made subject to its special appearance, as was expressly acknowledged in the trial court's dismissal order; and (3) the trial court, in fact, heard and sustained the special appearance and found the in rem order entered against IACL void and sanctionable precisely because the trial court lacked personal jurisdiction over IACL as well as subject-matter jurisdiction over the underlying Galveston County action.

Both of the Galveston County court's July 21, 2016 Orders entered following the July 19 hearing and now on appeal—its "Order Granting Isa Ali Alwazzan's Plea to the Jurisdiction" and its separate "Order Vacating May 6, 2016 Order for Judgment in Rem Subject to Co-Respondent's [IACL's] Special Appearance"—reflect a record different from the record as represented by the majority and support an understanding different from the majority's as to what transpired in the July 19 hearing. The trial court's rulings are based on facts the majority fails to credit that support jurisdictional rulings the majority fails to make.

4

The Galveston County trial court's "Order Granting Isa Ali Alwazzan's Plea to the Jurisdiction" states that, "after considering the motions, the law, the evidence submitted in the Motions, including the Declaration of Isa Alwazzan, the evidence submitted at the hearing, and the arguments of counsel," the court determined that Isa's Plea to the Jurisdiction should be granted because the court "lacked both subject matter jurisdiction over the subject matter of this divorce action and personal jurisdiction of the Respondents Isa Alwazzan and International Agencies Co. Ltd." Because of these jurisdictional rulings, the trial court did not reach the issues in Isa's Motion for New Trial. The trial court sustained the Plea to the Jurisdiction and held that it had no jurisdiction to hear the divorce filed in Galveston County "or any of the motions, orders and ancillary matters filed thereafter (including [but] not limited to the Turnover and Appointment of Receiver Order and any and all actions related to a Receiver and/or levy or other attachment of assets, property and/or funds)" related to the default judgments taken against Isa and IACL. It ordered that the final decree of divorce entered in Galveston County in June 2014 was "void and vacated," dissolved the receivership of IACL it had created by previous order, and ordered that "all other judgments, orders and matters related to this cause are void, a nullity, of no effect, vacated and not enforceable."

The trial court's "Order Vacating May 6, 2016 Order for Judgment in Rem Subject to Co-Respondent's Special Appearance" stated that, as a result of the July 19

5

hearing and the various filings the court considered during the hearing—including Isa's plea to the jurisdiction and IACL's bill of review—the court found that "the Petitioner [Winnie] never had jurisdiction to commence this action." The Order also reflected that the court ruled that "the action be dismissed, the June 2014 judgment be vacated, and that all subsequent supplemental orders be vacated," including the November 6, 2015 order for turnover and appointment of receiver for IACL and "the May 6, 2016 Order which had granted the Receiver Judgment in Rem of funds that had been levied from HSBC Bank[.]" The trial court vacated the May 6, 2016 Order for Judgment In Rem and ordered HSBC Bank to release IACL's funds restrained by the receiver's levy.

After obtaining dismissal of the Galveston County action and vacatur of the court's prior orders, Isa and IACL pursued sanctions against Winnie and her attorneys, in the form of attorney's fees, pursuant to Civil Practice and Remedies Code Chapter 10, Texas Rule of Civil Procedure 13, and the trial court's inherent jurisdiction. Isa and IACL claimed that Winnie and her attorneys violated Rule 13 and Chapter 10 by "fil[ing] groundless pleadings in bad faith seeking to create jurisdiction where none existed, alleging that separate property was community property, and seeking an improper third attempt at a judgment against IACL and Isa[.]" Following a three-day evidentiary hearing on the motion for sanctions in September 2016, the trial court signed an order on October 25, 2016, awarding monetary sanctions, in the form of

attorney's fees, against Winnie only. At Winnie's request, the court entered findings of fact and conclusions of law.

For the reasons set forth below, I would hold that neither subject-matter jurisdiction nor personal jurisdiction over either Isa or IACL ever properly attached in Galveston County—and could never properly attach there under the established facts of this case and the law—and that all actions of the Galveston County court, other than its rulings on jurisdictional and related issues, its vacating of its prior orders, and its sanctions award against Winnie, are null and void.

I would further hold that the non-suit obtained by Winnie in Harris County was improper and that all claims pertinent to that divorce action were finally adjudicated by the associate judge of that court. Therefore, the final order of the associate judge constitutes the decree of divorce between Isa and Winnie, effective as of the day it was signed and entered by the associate judge. Accordingly, all subsequent claims other than post-judgment motions filed in the Harris County district court should have been dismissed with prejudice.

I would affirm the order of the Galveston County court dismissing this action on jurisdictional grounds, granting sanctions against Winnie, and vacating all other orders. I would order this case transferred back to Harris County district court for entry of the final decree of divorce in accordance with this opinion.

## I. Background

The complex material facts are restated below for clarity and completeness.

Isa, a citizen of the Kingdom of Bahrain, moved to Texas in the 1980s to attend college, where he met Winnie. They married in 1985. Isa ultimately became an American citizen, but he maintained his Bahraini citizenship. Isa and Winnie had three children: a daughter born in 1985, a son born in 1995, and another son born in 1997. Isa and Winnie lived with their children in Montgomery County, Texas.

### A.    The Montgomery County Divorce Actions

In 2011, Isa and Winnie separated. Winnie first filed for divorce in Montgomery County in May 2011. She non-suited this action in July 2011 and re-filed for divorce in the same county one week later. Four months after that, Winnie and Isa signed a mediated settlement agreement (MSA). The MSA covered issues relating to conservatorship, geographic restrictions on residency of the minor children, child support, and division of the parties' marital property. On the signature page, the MSA cautioned the parties that it was "not subject to revocation," that the "the Mediator will only report to the Court that we have agreed on settlement terms," and that "it is [the parties'] responsibility to file this MSA with the Court." Isa alleged that his attorney informed him that she had filed the MSA with the Montgomery County court.

The MSA provided that Winnie's attorney would prepare a final decree of divorce by December 1, 2011. Winnie's attorney forwarded the proposed final decree

8

to Isa's attorney on December 22, 2011. In partial compliance with the MSA, Isa deposited $168,000.00 with the First Community Bank in Tomball as a lump-sum child support payment. However, the Montgomery County court never signed a divorce decree. Instead, Winnie retained new counsel, and, on February 7, 2012, her new counsel filed a non-suit of the Montgomery County action.

**B.    The Harris County Divorce Action**

On February 7, 2012, the same day that she filed her non-suit in the Montgomery County action, Winnie filed an "Original Petition" for divorce in Harris County district court. The petition did not mention the Montgomery County divorce action or the fact that it had resolved all issues between the parties. Instead, Winnie averred that there were "no court-ordered conservatorships . . . or other court ordered relationships" concerning the couple's two minor children.

In April 2012, Isa returned to Bahrain. Isa appeared in the Harris County divorce action by retained counsel and filed a counter-petition against Winnie alleging that her claims were barred by res judicata. Winnie also added IACL, Isa's family's company in Bahrain, to the divorce suit, claiming that she had a community property interest in the company.

Following a hearing on March 6, 2012, the associate judge of the Harris County court signed temporary orders appointing Isa and Winnie joint managing conservators of their minor sons K.A. and E.A. The orders provided, "These Temporary Orders

9

shall continue in force until the signing of the Final Decree of Divorce or until further order of this Court." On April 27, 2012, the associate judge signed additional orders, including an order that Isa pay Winnie's expert fees and expenses and that he pay "reasonable interim attorney's fees and expenses" to Winnie's attorneys. On August 1, 2012, the associate judge issued additional temporary orders ordering that Isa's income be withheld to pay child support. Each of these orders recited that the orders remained in full force and effect until the final decree of divorce was signed.

The Temporary Orders were subsequently partially modified in the associate judge's December 2012 Report.

On December 10, 2012, the Harris County case was tried before the district court's associate judge. IACL had not filed an answer and was not represented by counsel at trial. Winnie averred that IACL had been served through the Texas Secretary of State's Office and would be in default. The court observed that the citation lacked the signed return of service on IACL required by the Texas Rules of Civil Procedure and that this meant "you don't have good service." The court then took judicial notice that the citation "indicates that service was made on P.O. Box 1207, Austin, Texas, Secretary of State Third Amended Petition for Divorce."

Isa did not personally appear at trial, but he was represented by his retained counsel. Because Isa was out of the country and not present, the associate judge ruled that he was in default, struck Isa's pleadings, and did not permit his counsel to raise

10

his res judicata affirmative defense that all issues had been resolved in the MSA filed in Montgomery County. Winnie's counsel called her as the sole witness at trial.

At the end of the trial, counsel for both parties informed the associate judge that they had agreed to waive a de novo hearing to the referring district court judge. Winnie's counsel stated, "[E]verybody is waiving appeal to the referring Court . . . so that we're trying it once." Isa's counsel responded, "That is correct, Judge. That is our agreement." The associate judge rejected Winnie's counsel's request that he pronounce the divorce, explaining that only the district court judge could grant the divorce by signing the decree.

Following trial, the associate judge issued a written report, addressing issues that included conservatorship of the children and division of the community estate. Winnie was awarded sole managing conservatorship and Isa possessory conservatorship of the children. In the report, the associate judge awarded IACL's "assets and liabilities" to Isa. The associate judge awarded Winnie $3.5 million against Isa but did not award her monetary relief against IACL.

Winnie then filed a motion "for additional findings." In the motion she included a request that the associate judge reconsider his finding of no liability against IACL. She asked the associate judge to award a money judgment against IACL and Isa, jointly and severally. Winnie asserted that she had shown at trial that Isa "hides his money within [IACL] and withdraws it at his whim" and that IACL "is a sham to

11

protect [Isa] from his creditors." The associate judge denied Winnie's motion on February 21, 2013.

On April 10, 2013, Winnie filed a notice of non-suit in the Harris County action, as she had in the Montgomery County action. The notice was served on Isa's retained counsel. The presiding judge of the Harris County district court signed an "Order on Notice of Non-Suit" on April 12, 2013. The order stated that "the case is dismissed."

## C.    The Galveston County Divorce Action

### 1.    *The April 10, 2013 Galveston County Divorce Action*

On April 10, 2013—the same day that she non-suited her Harris County divorce action following trial with its agreed waiver of a de novo hearing before the district court—Winnie filed the suit underlying this appeal by filing an "Original Petition for Divorce" in the Galveston County district court. Winnie named both Isa and IACL as respondents. In her petition, she represented that she was "a resident of this [Galveston] county or will have resided in [Galveston County] by final trial for the preceding 90-day period." Winnie stated that she and Isa had two minor children "who are not under the continuing jurisdiction of any other court." She also alleged that there were "no court-ordered conservatorships . . . or other court-ordered relationships affecting the children," even though the Harris County action had not yet been dismissed by order of the Harris County district court at that time. The petition made no mention of either the Montgomery County divorce action or the Harris County

12

divorce action.

In her affidavit in support of her original petition in the Galveston County action, Winnie swore that she had "no idea" where Isa was and was unable to locate him, despite her due diligence. She asserted that citation by publication would be the appropriate means of serving Isa. She also asserted that IACL could be served through the Texas Secretary of State, although she made no allegation that IACL was doing business in Texas. She asserted only that IACL was a foreign corporation located at "131 Cel-Khalefa Avenue, Manama, Kingdom of Bahrain."

Winnie filed an amended petition in the Galveston County divorce action on June 3, 2013. Winnie continued to seek relief from IACL in this petition. She alleged:

*16. Relief from [IACL] for Fraudulent Transfer*

[IACL] is a corporation established under the laws and customs of the Kingdom of Bahrain. It is alleged to be the recipient of community funds, interests, and/or property that was fraudulently transferred by [Isa] to [IACL], without consideration and/or for less than reasonably equivalent value. The purpose of the transfer was to defraud [Winnie's] property rights in that property and/or [Winnie's] separate property rights in that property, and [IACL] had notice of [Isa's] intent to injure [Winnie's] rights. [Isa] has transferred and/or delivered and/or given to [IACL] interests in the community estate.

[IACL] has further subjected itself to the jurisdiction of Texas and furthered the villainous aims of the fraud, [waste], and emotional distress of [Winnie] by attempting to form INTERCOL USA, LTD, CO, a whol[ly] owned subsidiary of [IACL] formed by [Isa] to further perpetrate scams on [Winnie's] property rights through transfers of property and structuring of the businesses.

13

*17. Sham corporation*

[Isa] has disregarded the formalities of the corporation and treats the assets and income of [IACL] as his own. By doing so, [Isa] has ignored and disavowed the corporate veil. The assets of [IACL] should be treated as community assets.

*18. Fraud*

[IACL] is alleged to have engaged in a pattern of conduct that demonstrates a conspiracy to defraud [Winnie] of her interest in the community estate. [IACL] has assisted and permitted [Isa] to open businesses such as Innovative Design Concepts, Ltd., a British Corporation . . . under the auspices of [IACL]. EXIT LONE STAR REALTY is a Texas Corporation that was created as a subsidiary of [IACL] in Texas to avoid the participation of [Winnie] and the community.

Although Winnie alleged that IACL was involved in a fraudulent transfer, she did not indicate which, if any, property had been fraudulently transferred. She did not allege a factual basis for IACL's liability in the divorce action. She alleged no factual basis for finding that Isa exercised dominion and control over IACL, that IACL was Isa's alter ego, or that Isa managed the corporation. She alleged no facts to show that IACL ignored its corporate form or to show that its assets could be treated as community assets. She also failed to allege facts sufficient to establish jurisdiction over IACL.

On June 3, 2013, Winnie filed a motion to serve Isa by publication. In her supporting affidavit, she averred:

I have not seen my husband Isa Ali Alwazzan, since April 24, 2012. I have no idea where he is at present. . . . [Isa] is a transient person. I have

14

exercised due diligence to locate the whereabouts of [Isa] and have been unable to do so. I have attempted to contact [Isa] at his old addresses, old phone numbers, old friends, and hangouts. I have been unsuccessful in finding him. [Isa] can be contacted through his company [IACL]. Although they will not tell me where he is, they can always get him a message or money. Serving him through [IACL] would be as likely as any other method of service to provide actual notice of this suit.

Winnie failed to inform the Galveston County court that she had been in regular contact with Isa through her children, who spoke with him regularly by phone and had taken several trips to visit him overseas, which were approved by Winnie in accordance with the terms of the temporary orders in the Harris County suit. Winnie also concealed from the Galveston County court that she communicated regularly with Isa through email, and, although he did not respond, she knew from her children that he was receiving and reading her emails.

The trial court granted Winnie's motion, ordering that Winnie serve Isa "by publishing notice in the *Galveston County Daily News*." Winnie filed a return of service, indicating that notice of the suit had been published on July 23, 2013. Winnie made no other attempt to serve Isa in the Galveston County action.

Winnie also alleged that IACL could be served through the Texas Secretary of State's office. The citation and amended petition was served on the Texas Secretary of State's office on June 10, 2013. The Secretary of State then forwarded the amended divorce petition and citation to an address in Bahrain that Winnie had provided. However, the Secretary of State never returned proof to the Galveston County clerk to

15

indicate whether service was made on IACL, and the record of filings with the Secretary of State indicated that the citation was mailed to an incorrect address that excluded a P.O. Box number: "131 Al-Khalefa Avenue, Manama, Kingdom of Bahrain." The certification by the Texas Secretary of State, dated September 3, 2013, stated, "As of this date, no response has been received in this office."

On November 7, 2013, the Galveston County court appointed an attorney ad litem, W. David Marion, to represent Isa in his absence. Marion filed an answer on Isa's behalf, generally denying Winnie's claims.

On June 10, 2014, Winnie's counsel served a three-day "Notice of Intention to Proceed with Default" on "each attorney of record." The only attorney of record besides Winnie's attorneys was the court-appointed ad litem counsel for Isa. Neither IACL nor Isa was given actual or constructive notice of the default trial.

### 2.     *The June 13, 2014 Galveston County Trial and Default Divorce Decree*

The case was tried in the Galveston County district court before a visiting judge on June 13, 2014. Winnie and her counsel attended trial, but neither Isa nor IACL appeared. Isa's appointed ad litem counsel appeared at trial on Isa's behalf, arriving late because of lack of notice. No counsel appeared for IACL.

Winnie was the only witness to testify at the default trial. She answered affirmatively when asked by her counsel if, prior to filing the Galveston County action, she had lived in Texas for at least six months and in Galveston County for at least

ninety days. Winnie testified that Isa had left the country in 2012 with another woman with whom he was having an affair and that Isa had cut off all funds to her. Winnie testified that Isa had physically abused the children, including giving their youngest son, E.A., a black eye shortly before Isa left the country.

Winnie testified that she served Isa by publication in the Galveston County action because Isa was transient, traveling around Europe and the Middle East with no fixed address. She stated that she tried to contact Isa through his family and through IACL, but neither his family nor IACL would give her his address. She testified that she had no way to contact Isa and stated that he had "cut off" communications with her and their children. Winnie testified that E.A. had spoken to Isa via Skype, but Isa did not tell E.A. where he was living.

Winnie testified concerning IACL and its connection to Isa's family. She stated that the company, which has its headquarters in Bahrain and engages in numerous different types of businesses, was founded by Isa's father, and ownership had later been transferred to Isa and his two brothers after she and Isa married. She stated that, during her marriage to Isa, IACL's value had increased greatly, and it had built numerous buildings in Bahrain. Although she offered no documentation concerning the total assets of IACL or what it was worth, she testified that Isa often bragged that IACL was worth $5 billion.

With respect to IACL's connection to the United States, Winnie testified that

IACL had provided all the funding for a real estate business that Isa had started on IACL's behalf in the United States. She also offered into evidence a "certificate of filing" from the Texas Secretary of State's Office for "INTERCOL USA LTD CO.," which, according to Winnie, was a company IACL used to conduct operations in the Unites States. She did not provide details concerning the nature of these operations or what actions IACL had taken or what business it had conducted in Texas. Winnie agreed with her counsel that Isa would "bring [items] into the United States as [IACL's] agent and would sell stuff in the United States and likewise would buy stuff in the United States, ship it at the request of [IACL] to sell at [IACL]."

Winnie did not testify that she had any first-hand knowledge of the affairs of IACL or of any company it used for operation or business it conducted in Texas. However, she characterized IACL as a corporate sham, testifying that Isa and his family routinely disregarded IACL's corporate form and intermingled assets with IACL, including community property assets. She testified that, after she and Isa separated, Isa transferred $500,000 of community funds to IACL, leaving her with significant unpaid community debt. As a result, their martial residence, worth $800,000, had been foreclosed upon.

Winnie's documentary evidence included her inventory, which listed hers and Isa's assets and liabilities. She valued Isa's 16.6666% ownership interest in IACL at $666,000,000.00.

On June 13, 2014, the visiting Galveston County judge signed a default divorce decree, dissolving Winnie and Isa's marriage. At the time of the decree, E.A. was Winnie and Isa's only minor child, and the decree appointed Winnie as E.A.'s sole managing conservator and Isa as his possessory conservator. The decree ordered Isa to pay child support and spousal maintenance to Winnie. The decree also awarded Winnie a money judgment of $416,532,514.56 against Isa and IACL, jointly and severally.[1] The visiting judge made no findings of fact.

On June 15, 2014, Isa's appointed attorney ad litem sent a letter to Isa informing him of the default divorce decree. The letter was addressed and sent to IACL. Isa received the letter in early August 2014. Isa remarried in 2015. Isa's appointed counsel did not file a motion for new trial.

3.     ***Winnie's October 2015 Motion for Turnover and Appointment of a Receiver for IACL, the Receiver's Motion for Judgment In Rem Against IACL, and IACL's May 2, 2016 Special Appearance***

More than a year after the visiting Galveston County judge signed the default divorce decree, in October 2015, Winnie filed an "Application for Turnover after Judgment and Appointment of Receiver." She alleged that she had been unable to collect the $416,532,514.56 money judgment from Isa and IACL, and she requested that the trial court appoint a receiver to assist in the collection of the judgment. On

---

[1]     The Galveston County visiting judge signed a reformed decree of divorce on June 19, 2014. This decree specifically awarded Winnie real property in Hockley, Texas, and a condo in Galveston, and the decree divested Isa of his interest in these properties.

19

November 6, 2015, the trial court—a different judge than the visiting judge who signed the default divorce decree in June 2014—granted Winnie's application, appointed a receiver, and authorized the receiver "to take possession of all non-exempt property" in Isa's or IACL's "actual or constructive possession." The court required the receiver to post a bond of only $100.

In December 2015, the receiver issued a "Revised Court Levy" to HSBC Bank, requesting the bank to intercept any wire transactions to IACL or Isa and send any intercepted funds to the receiver. In response to the levy, HSBC Bank suspended a series of wire transfers that were either originated by IACL or for which IACL was the intended beneficiary.

On April 20, 2016, the receiver filed a motion for judgment in rem, requesting that the court order HSBC Bank to place approximately $1,500,000 into the registry of the court for eventual distribution to Winnie. A hearing was set for May 4, 2016, on this motion.

On May 2, 2016, two days before the hearing on the receiver's motion, IACL filed a special appearance, which it amended on May 4. IACL challenged the trial court's personal jurisdiction over it, arguing that the trial court lacked personal jurisdiction because IACL did not have sufficient minimum contacts with Texas. IACL also asserted that Winnie failed to serve it with process, stating, "IACL has never accepted or consented to service and it appears that the Secretary of State has no

20

recorded proof of service."

### 4.    IACL's May 4, 2016 Plea to the Jurisdiction

On May 4, 2016, IACL filed a "Motion to Set Aside Default Judgment for Lack of Personal Jurisdiction and Subject Matter Jurisdiction and for Limited Discovery Related to the Issues Raised for Vacatur," subject to its special appearance. It sought to set aside the default judgment signed on June 13, 2014, for lack of personal jurisdiction over IACL because IACL did not have sufficient minimum contacts with Texas and Winnie failed to serve IACL with process. IACL also argued that the Galveston County court lacked subject-matter jurisdiction over IACL as a foreign corporation because its amenity to jurisdiction had not been shown by the pleading of jurisdictional facts in Winnie's divorce petitions, such as facts relevant to a finding that IACL was Isa's alter ego, and could not be shown. IACL sought discovery of jurisdictional facts and facts related to service of process.

The trial court signed an order denying IACL's special appearance on May 5, 2016, without hearing the merits of the application. That same day, the trial court signed an order granting the receiver's motion for an in rem judgment, ordering HSBC Bank to deposit over $3.6 million in funds originating from IACL into the court's registry to be distributed to the receiver and Winnie.

### 5.    IACL's May 11, 2016 Petition for Writ of Mandamus to this Court

On May 11, 2016, IACL filed a petition for writ of mandamus in this Court and

21

a motion to stay the Galveston County court's May 5, 2016 order enforcing the June 2014 default judgment, complaining that the trial court had not held a hearing on its special appearance and asserting that the trial court did not have personal jurisdiction over IACL and that the court had failed to hear and decide its special appearance. In response to an emergency motion filed by IACL, this Court stayed the trial court's order requiring HSBC Bank to deposit funds originating from IACL into the registry of the Galveston County court.

### 6. Isa's June 13, 2016 Plea to the Jurisdiction and Motion for New Trial

While the mandamus petition was pending in this Court, on June 13, 2016, Isa filed a motion for new trial and plea to the jurisdiction in the Galveston County court, using newly retained counsel.

In his plea to the jurisdiction, Isa asserted that the Galveston County court lacked subject-matter jurisdiction over this suit because, when suit was filed, the Harris County court had continuing, exclusive jurisdiction over the matter. Isa also argued that the rulings in the Harris County action had a res judicata effect, barring the Galveston County court from considering Winnie's claims. Isa further argued that the parties had signed a binding MSA in the Montgomery County action which precluded the Galveston County court from issuing contradictory rulings or orders. Finally, Isa argued that the Galveston County court could not render a decree of divorce because neither party had been a resident of Galveston County for the ninety days preceding

22

the filing of the Galveston County divorce action, as required by the Texas Family Code section 6.301. *See* TEX. FAM. CODE ANN. § 6.301 (West 2006).

Isa's motion for new trial, supported by his declaration, sought to vacate and dismiss the June 2014 default divorce decree. *See* TEX. R. CIV. P. 329(a) (authorizing trial court to grant motion for new trial filed within two years of judgment, if judgment was rendered on service by publication and defendant did not appear in person or by attorney of his own selection). Isa argued that a new trial was proper because: (1) service of process by publication was invalid; (2) Winnie had not satisfied the mandatory residency requirement of section 6.301; (3) the Harris County associate judge had conducted a trial on the merits and entered a ruling, and thus res judicata barred re-litigation of Winnie's claims; (4) the MSA entered into in the Montgomery County action remained enforceable; and (5) Winnie's actions of filing the Galveston County divorce action, after previously filing and non-suiting the same claims in both Montgomery County and Harris County, constituted "blatant forum shopping."

### 7. *IACL's June 30, 2016 Bill of Review*

On June 30, 2016, IACL filed a separate bill-of-review action in the Galveston County court, also seeking to vacate and dismiss the June 2014 default judgment against it in this case. This action was filed under a different trial court cause number from Winnie's Galveston County divorce action. In its bill-of-review petition, IACL asserted that the Galveston County court's June 2014 divorce decree in this case should

23

be vacated because the Galveston County court lacked both subject-matter and personal jurisdiction to render the decree, Winnie did not properly serve IACL with process, and res judicata barred re-litigation of claims already decided by the Harris County court.

Along with numerous other exhibits, IACL attached the affidavit of Abdul Rahman Ali Alwazzan, the older brother of Isa. In it, Abdul Rahman averred that he was one of two Directors of IACL and had been "for more than forty-four years." He averred that IACL is a Bahraini corporation "duly formed under the laws of The Kingdom of Bahrain" in 1957, half of which is owned by the Alwazzan family. In early 1972, his and Isa's father died and half of the company passed equally to his three sons. Abdul Rahman further averred that Isa moved to Texas in the early 1980s and lived there until 2012; that Isa had never served as a manager, director, or officer of IACL; and that he had not been employed by IACL. Although Isa used the name "Intercol" for several of his businesses in Texas, these businesses sold different products in a different market in a line of business—real estate brokerage—in which IACL had never been involved.

Abdul Rahman further averred, "IACL did not do any business in Texas at any time during the marriage between Isa and Winnie Stacey," did not ship goods to Texas, never had an interest in real property in Texas, never owned a subsidiary in Texas, "and was not in any way doing business in Texas in any capacity, since the 1970's."

24

Finally, he averred that, according to the face of the certification of service, the Texas Secretary of State sent notice to the wrong address that was inadequate for service to reach IACL and that he "did not learn of the Galveston case until after the Receiver had been appointed" in November 2015, "and [the Receiver] started with the intent of disrupting IACL's business."

8. *The Galveston County Court's July 19, 2016 Hearing and Ultimate Dismissal of Winnie's Galveston County Divorce Action for Lack of Subject-Matter and Personal Jurisdiction*

The Galveston County court held a hearing on Isa's motion for new trial and plea to the jurisdiction on July 19, 2016. The court determined to proceed on Isa's motions, after which it stated it would "look at proceeding" on IACL's bill of review.

Testimony elicited by Isa's counsel established that, at the time of the June 2014 default hearing, Winnie worked for Tomball Ford. She had, in connection with a request for a background check before starting employment, listed her current and past addresses as in Magnolia, Texas, in Montgomery County, and then in Houston, in Harris County; but she never had provided an address in Galveston County.

The ad litem attorney appointed by the court to represent Isa in the Galveston County divorce action, David Marion, also testified. He testified, in response to questions from Isa's counsel, that he had been unable to contact Isa because he was never given any information other than that Winnie could not find him. Nevertheless, he appeared at trial in June 2014 on Isa's behalf and attempted to represent his client.

25

He was unaware at that time that Isa and Winnie had previously signed an MSA, but he testified that, had he known that the parties had settled all of their claims, he would have advised the Galveston County court of that and would have asked that the current case be abated or dismissed. He was also unaware of the trial on the merits before the associate judge in Harris County, which would also have caused him to bring the Harris County action to the attention of the Galveston County court and to seek that this current case be dismissed or abated. He also testified that he was given three days' notice of Winnie's intention to take a default judgment in June 2014, rather than the standard forty-five days' notice of a first setting, but he did appear for part of the default hearing. He did not know that at the time of the hearing Winnie was receiving her mail in Tomball, Texas.

On cross examination by Winnie's counsel, Marion admitted that he did not send any discovery to find out facts from Winnie. He did not have any contact with IACL, and he did not seek Isa's address from IACL, but only sought Isa's address online and failed to find it.

On questioning from IACL's attorney, Marion admitted that IACL did not appear at the trial. Marion further testified that, after his appointment, he was made aware that service had been authorized on IACL by serving anyone eighteen years of age or older at a certain address in Bahrain. He knew that Isa had been authorized to be served by publication in a Galveston newspaper or at the same address as IACL in

26

Bahrain, but he had not seen evidence that service was ever effected on IACL or on Isa. However, after the June 2014 default trial, Marion sent notice to Isa at the Bahrain address, and Isa spoke with him and referred to that letter at a later time. Marion also testified that, while he did not know of the non-suit taken in the Harris County case, he did know that it is not possible under Texas Rule of Civil Procedure 162 to take a non-suit after a trial on the merits. Marion did not file a motion for new trial or any appellate proceeding on Isa's behalf following the default hearing; he only signed the divorce decree as to form and substance. Marion first spoke to Isa in the summer of 2014 after the default hearing, and they subsequently exchanged a few telephone calls and emails. Isa retained Marion to file a brief in support of Isa's motion for new trial filed by Isa's subsequently retained counsel. Marion appeared at the July 19, 2016 hearing as a witness, not as retained counsel.

Winnie testified on examination by IACL's attorney that she had signed the MSA and that she had represented to the Galveston County court by affidavit that the MSA was never filed in Montgomery County. She admitted that, in fact, it was filed in Montgomery County. She also admitted that, after the MSA was signed, she non-suited the Montgomery County divorce action and the same day filed a new petition for divorce in Harris County. She also admitted that when she applied for work at Tomball Ford in 2015 she did not give her employer any address other than Houston in Harris County and Magnolia in Montgomery County. She likewise admitted that

she gave testimony in the Harris County divorce action before the associate judge. She also admitted that she worked for her counsel of record, Daniel Lemkuil, during 2014.

Winnie testified that she did not remember asking the Harris County associate judge to award her $666 million against Isa and IACL or the judge declining to do so. She did recall non-suiting her Harris County divorce action and filing a new petition for divorce in Galveston County on the same day, April 10, 2013. Winnie also admitted that while she was claiming she did not know where Isa was or have any way to reach him at the time the Harris County action was tried and non-suited and the Galveston County action filed,[2] she had sent numerous emails to Isa, she had signed the passport application permitting her minor son to visit Isa in London the month before the default hearing in June 2014, and she had emailed Isa where to pick their son up in baggage claim when he landed, but she did not notify the court that she knew where Isa was. Instead, she affirmatively represented to the Galveston County court at the default hearing that her children had only Skyped once with Isa and had gotten a few emails. She was unable to point to any documentation showing receipt of service by either Isa or IACL at the address in Bahrain. Isa offered evidence to show that Winnie had not used due diligence to locate him before claiming that she needed to serve him by publication and she had not spoken with his court-appointed ad litem attorney.

---

[2] Winnie admitted that her counsel provided notice of her non-suit of the Harris County action to Isa's retained counsel in that action, but she never sent a copy of the Galveston County action to that counsel.

The parties also presented evidence regarding whether Winnie had been a resident of Galveston County for the preceding ninety days when she filed the Galveston County action on April 10, 2013, as required by Family Code section 6.301. In both her original and amended petitions, Winnie had represented that she was "a resident of [Galveston] [C]ounty or will have resided in this county by final trial for the preceding ninety-day period." At the June 2014 default trial, Winnie had answered affirmatively when her counsel asked whether she had "lived in Galveston County 90 days prior to filing suit."

At the July 2016 hearing, Winnie testified that she had moved to Galveston County in February 2013, less than ninety days before filing suit in April 2013. In response to questioning from her attorney, Winnie testified that she had moved from Montgomery County to Galveston, where she spent "a majority of the time," although she also had a house in Hockley, in Harris County. Winnie's counsel pointed out that she had filed her amended petition in June 2013, more than ninety days after the date Winnie testified she had moved to Galveston.

Isa presented evidence at the hearing to show that Winnie had never established residency in Galveston County. In his declaration supporting his motion for new trial, Isa stated that Winnie told him, in an email dated July 24, 2013, that she was only going to Galveston on the weekends, and that she was still living in their "old area." Isa also called as a witness Linda McCann, custodian of records for Tomball Ford. Isa

29

offered business records from Tomball Ford, including Winnie's employment application from January 2015, in which she listed her address as a Houston address. As part of the application process, Winnie had also filled out an authorization for a background check, which asked her to list her "addresses within the past seven years." She listed a Magnolia, Texas address and indicated that she had lived there from 2001 until 2010. She also listed a Houston address on the background check, but not a Galveston address.

At the hearing, Winnie was asked why she had not listed a Galveston address on the background check if she had resided there in 2013. She responded, "I didn't see this within the past seven years [instruction] or I would have put my other addresses." Winnie also stated that she had not provided the Galveston address for the background check because she "didn't have a Galveston address" because she could not receive mail at her Galveston condo. She agreed that by signing the authorization she was representing to her employer that her answers were true.

Winnie also testified that she had filed a non-suit of her Harris County action and filed a new suit in Galveston County after the Harris County associate judge failed to award her damages against IACL because she could not afford to appeal. She admitted that Isa had signed the Montgomery County MSA. She also admitted that her testimony at the default hearing that IACL did business in the United States was based on the shipment of a Mazda vehicle to her son from IACL as a gift paid for by Isa.

Winnie admitted, in response to questioning, that Isa inherited his shares in the family business, IACL, as a child, before his marriage to Winnie. But when Winnie's lawyers attempted to elicit her testimony that IACL was formed in 2002, during the marriage, as evidence that Isa's ownership interest in IACL was community property, the court refused to allow further pursuit of Isa's and Winnie's property interests other than to acknowledge that there were both separate and community property interests at stake, and it refused to admit evidence on this issue.

Finally, IACL's counsel read into the record from the transcript of the trial before the Harris County associate judge the statement of Winnie's counsel that "everybody is waiving appeal to the referring court [the Harris County district court] to you so that we're trying it once. That was my understanding." And he read the response of Isa's counsel, "That is correct, Judge. That is our agreement." Winnie testified that she could not remember that.

At the end of the hearing, the trial court remarked, "What a mess," and recited numerous problems with the case, including active pleadings by Isa on file in the Montgomery County action when it was non-suited by Winnie so that it was "a court of continuing jurisdiction in the Montgomery County case" when the Harris County action was filed; that Harris County was "a court of continuing jurisdiction when the Galveston County case was filed"; that the non-suit in the Harris County action was "not a nonsuit" because Winnie "had put on her case and rested," leaving that case

31

active; that Winnie failed to use due diligence in locating Isa and IACL in the Galveston County action; that the Galveston County court had granted a default judgment without required notice when there was an answer on file by Isa's court-appointed attorney ad litem, which required "a regular final hearing with a 45-day notice"; and that the Galveston County lacked venue because Winnie testified she had moved to Galveston in February 2013 and filed her suit on April 10, 2013, which was less than the ninety days required to establish venue.

The trial court commented, "[T]his is probably one of the most egregious examples of forum shopping out there. I've never read a case this bad. . . . I am going to grant the plea to the jurisdiction and dismiss the case." The court asked the parties to draft appropriate orders, including an order "rescinding [its] previous order regarding the money" and vacating its orders appointing the receiver and ordering money placed in the registry of the court. The trial court refused to sever the cases against Isa and IACL at Winnie's counsel's request. The court indicated a belief that IACL's separately-filed bill of review would be mooted by the final orders in the divorce action.

On July 21, 2016, the trial court signed an "Order Granting Isa Ali Alwazzan's Plea to the Jurisdiction," providing in relevant part:

> The Court held a hearing on both motions [Isa's plea to the jurisdiction and motion for new trial] on July 19, 2016. . . .

After considering the motions, the law, the evidence submitted in the Motions, including the Declaration of Isa Alwazzan, the evidence submitted at the hearing, and the arguments of counsel, the Court has determined that the Plea to the Jurisdiction should be SUSTAINED because—from the inception of this divorce proceeding to the present—the Court lacked both subject matter jurisdiction over the subject matter of this divorce action and personal jurisdiction of the Respondents Isa Alwazzan and International Agencies Co. Ltd. Because of the ruling on jurisdiction, the Court did not reach the issues on the Motion for New Trial.

It is therefore, ORDERED, that Isa Alwazzan's Plea to the Jurisdiction is SUSTAINED and that the court has no jurisdiction to hear the divorce filed on April 10, 2013 or any of the motions, orders and ancillary matters filed thereafter (including [but] not limited to the Turnover and Appointment of Receiver Order and any and all actions related to a Receiver and/or levy or other attachment of assets, property and/or funds).

It is further ORDERED that the July 19, 2014 Reformed Final Decree of Divorce is void and vacated.

It is further ORDERED that the Receivership that was created by Order dated November 8, 2015, is hereby dissolved.

It is further ORDERED, that all other judgments, orders and matters related to this cause are void, a nullity, of no effect, vacated and not enforceable.

It is further ORDERED, that the Receiver is discharged from his duties and all monies and property collected by him shall be released, or returned to the proper party forthwith. . . .

That same day, the trial court also signed its "Order Vacating May 6, 2016 Order for Judgment In Rem." That order stated,

On the 19th Day of July, 2016 day came on to be heard Respondent Isa Al Wazzan's Plea to the Jurisdiction.

33

The Receiver appeared in person. The Petitioner Winnie Stac[e]y Alwazzan, appeared in person and by counsel. The Respondent Isa Alwazzan appeared by counsel. The co-respondent, Internal Agencies Co. Ltd. ("IACL") appeared through counsel.

After the Court's review of the respondent Isa Alwazzan's Plea to the Jurisdiction, and briefs filed by the Petitioner and Receiver in opposition, and by co-respondent IACL in support of its Bill of Review in a separate but related action, captioned as *International Agencies Co. Ltd. v. Alwazzan, et al.*, 16 FD1958, arguments by the parties and evidence entered during the hearing, including testimony of two witnesses, the Court found that the Petitioner never had jurisdiction to commence this action, and ruling that the action be dismissed, the June 2014 judgment be vacated, and that all subsequent supplemental orders be vacated, including the November 8, 2015 Order for Turnover and Appointment of Receiver and the May 6, 2016 Order which had granted the Receiver Judgment in Rem of funds that had been levied from HSBC Bank USA N.A. ("HSBC") and restrained in the amount of $3,693,091.42 (the "Restrained Funds"). THE COURT FINDS that the May 6, 2016 Order for Judgment In Rem is hereby vacated, and the full amount of restrained funds via the Receiver's Levy, be immediately released from the creditor process initiated by the Receiver.

IT IS ORDERED that the receivership is dissolved . . . and that HSBC shall immediately release the Restrained Funds.

Based on the trial court's July 21 orders vacating the June 2014 default divorce decree, dismissing the Galveston County divorce action, dismissing the receiver, and vacating the receiver's judgment in rem, this Court dismissed as moot IACL's previously filed mandamus petition regarding these matters. *In re Int'l Agencies Co., Ltd.*, No. 01–16–00383–CV, 2016 WL 6462199, at *1 (Tex. App.—Houston [1st Dist.] Nov. 1, 2016, orig. proceeding) (mem. op.).

34

### 9. *Isa's and IACL's Motion for Sanctions and the September 2016 Hearing*

After obtaining dismissal of the Galveston County action and vacatur of the court's prior orders, Isa and IACL pursued sanctions against Winnie and her attorneys. They requested that the trial court impose sanctions, in the form of attorney's fees, pursuant to Civil Practice and Remedies Code Chapter 10, Texas Rule of Civil Procedure 13, and the trial court's inherent power. Isa and IACL argued that Winnie and her attorneys filed suit in Galveston County "to seek a different result against IACL" after they "failed in their earlier attempt [to recover against IACL] in Harris County." They argued that sanctions were appropriate because Winnie and her attorneys had made "intentional misrepresentations of fact to this Court [to] falsely create jurisdiction and deny [Isa and IACL] notice of the Galveston County" suit.

Isa and IACL argued that Winnie and her attorneys violated Rule 13 and Chapter 10 by "fil[ing] groundless pleadings in bad faith seeking to create jurisdiction where none existed, alleging that separate property was community property, and seeking an improper third attempt at a judgment against IACL and Isa[.]" Isa and IACL pointed out that Winnie and her attorneys had: (1) falsely alleged and maintained that Winnie had resided in Galveston County for the required ninety-day period; (2) falsely

asserted that Winnie had "no idea where Isa was" to obtain service by publication; (3) falsely asserted that there were no prior court orders of conservatorship affecting the children; (4) asserted that Isa had fraudulently transferred community assets to IACL with no supporting evidence; and (5) concealed the Montgomery County MSA and the Harris County divorce action from the Galveston County court.

The trial court conducted a three-day evidentiary hearing on the motion for sanctions in September 2016. Winnie and her attorneys testified at the hearing, and each of them had separate counsel. In October 2016, the trial court signed an order awarding monetary sanctions, in the form of attorney's fees, against Winnie only.[3] The trial court did not award sanctions against her attorneys. Winnie requested that the trial court issue findings of fact and conclusions of law regarding the sanctions, which the trial court did in November 2016.

In addition to its findings and conclusions with respect to its previous orders, the court found facts supporting sanctions pursuant to Chapter 10 and Rule 13. The court found that the original petition for divorce in Galveston County was filed by Winnie's counsel, Jared Woodfill, on her behalf on April 10, 2013, after consultation

---

[3]     The trial court imposed $50,000 in sanctions against Winnie on behalf of Isa and $100,000 in sanctions on behalf of IACL. The court imposed an additional $25,000 in sanctions against Winnie on behalf of Isa and $25,000 on behalf of IACL if she continued to litigate her claims in the trial court; $85,000 in sanctions on behalf of ISA and $85,000 on behalf of IACL if Winnie appealed to the court of appeals; and $35,000 in sanctions on behalf of Isa and $35,000 on behalf of IACL if Winnie filed a petition for review with the Texas Supreme Court.

with Winnie's additional counsel Daniel Lemkuil. The court found that the filing of the suit constituted "inappropriate forum shopping, a violation of the rules of Texas procedure, and violation of the duties of candor and obligations imposed under [Chapter] 10 and Rule 13, for Winnie Stacey, and her attorneys Daniel Lemkuil and Jared Woodfill, . . . to file the Original Galveston Petition in this Court on April 10, 2013, and to proceed in this Court" for a number of reasons.

The facts found by the trial court in support of sanctions included:

(1) the original filing of divorce in Montgomery County that was later reasserted in Harris County and then again in Galveston County, even though the MSA reached during the pendency of the Montgomery County action was intended to and did resolve all issues between the parties;

(2) the subsequent filing of the Harris County action and trial to a final decision before the associate judge on December 21, 2012, the parties' agreed waiver of the right to a de novo hearing before the referring district court, Winnie's request for "additional rulings" after the associate judge awarded Winnie $3.5 million against Isa but did not find liability on the part of IACL, and Winnie's filing of a non-suit of the final decision on the merits and commencement of a new case in Galveston County "as an alternative to appealing the Harris County decision" without "precedential or statutory authority" to non-suit the decision on the merits;

(3) the filing of the original Galveston County divorce petition "for the improper purpose of attempting to get a judgment against IACL, after the Harris County court had adjudicated the same claims against the same parties in a final disposition on the merits," in a petition that "included false or misleading statements," the filing of a false affidavit signed by Winnie stating that she did not know how to contact Isa even though she knew Isa had been represented by counsel in the Harris County action, which was non-suited the same day she filed her petition in Galveston County; and

(4) the provision of false testimony regarding Winnie's residence at

37

the time of filing the Galveston County action, the concealment of the final trial on the merits in Harris County and a decision by the associate judge, false pleadings regarding IACL "for the improper purpose of falsely invoking Jurisdiction over IACL in Texas," and the failure to attempt to give either Isa or IACL actual notice of the suit at any time prior to the June 2014 default hearing with the knowledge that neither Isa nor IACL would have reasonable notice to appear.

The court also entered conclusions of law finding sanctionable behavior based on these facts.

## II. Winnie's Appeal and the Majority's Rulings

Winnie now appeals, raising three issues. In her first two issues, Winnie contends that the trial court erred in "dismissing the case on a plea to the jurisdiction," asserting that no jurisdictional grounds were presented to the trial court to support vacatur of the June 2014 divorce decree and dismissal of the case. The majority agrees with Winnie but affirms dismissal of the Galveston County action anyway on statutory grounds that did not form the basis of the trial court's dismissal of the suit, namely that Winnie failed to establish residency in Galveston County ninety days prior to filing her divorce action there. I agree that Winnie failed to satisfy the ninety-day residency requirement for filing suit for divorce, but I do not find that issue dispositive.

In her third issue, Winnie challenges the sanctions award. The majority affirms that as well. I agree with the majority's holding on this issue.

I would affirm the Galveston County court's judgment dismissing the case on

Isa's plea to the jurisdiction for lack of both subject-matter jurisdiction and personal jurisdiction, granting sanctions, and vacating all other orders of that court. Rather than attempting to refute the majority's reasoning and conclusions on each of the issues, I have set out below what I consider to be a correct analysis of the law on the facts of the case and the correct disposition.

### III. Plea to the Jurisdiction

**A.      Standard of Review of a Plea to the Jurisdiction**

A plea to the jurisdiction seeks dismissal of a case based on lack of subject-matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *see also City of Houston v. Rhule*, 417 S.W.3d 440, 442 (Tex. 2013) (per curiam) (stating that subject-matter jurisdiction is essential to court's power to decide case). A trial court must decide at the earliest opportunity whether it has the constitutional or statutory authority to decide a case before allowing the case to proceed. *Tex. Dept. of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226 (Tex. 2004). "As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court." *State Bar of Tex. v. Gomez*, 891 S.W.2d 243, 245 (Tex. 1994).

**B.      Subject-Matter Jurisdiction**

*1.      Standard of Review of Subject-Matter Jurisdiction*

Whether a court has subject-matter jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226; *Tex. Nat. Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). Whether a pleader has alleged facts that affirmatively demonstrate the trial court's subject-matter jurisdiction is a question of law which we review de novo. *Miranda*, 133 S.W.3d at 226; *see City of Dallas v. Carbajal*, 324 S.W.3d 537, 538 (Tex. 2010) (per curiam) (stating that whether court has subject-matter jurisdiction is question of law that we review de novo). Likewise, whether undisputed evidence of jurisdictional facts establishes a trial court's jurisdiction is a question of law. *Miranda*, 133 S.W.3d at 226. In some cases, disputed evidence of jurisdictional facts that implicate the merits of the case may require resolution by the fact-finder. *Id.*

When a plea to the jurisdiction challenges the pleadings, we determine whether the pleader has alleged facts that affirmatively demonstrate the trial court's jurisdiction to hear the case. *Id.*; *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). We construe the pleading liberally in favor of the plaintiff and look to the pleader's intent. *Miranda*, 133 S.W.3d at 226. If the pleadings do not contain facts sufficient to affirmatively demonstrate the trial court's jurisdiction, but do not affirmatively demonstrate that the defects are incurable, the plaintiff should be allowed the opportunity to amend. *Id.* at 226–27. However, if the pleadings affirmatively negate the existence of jurisdiction, the plea to the jurisdiction may be granted without affording the plaintiff the opportunity to amend. *Id.* at 227.

40

If a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties when it is necessary to resolve the jurisdictional issues. *Id.* When the jurisdictional challenge implicates the merits of the plaintiff's cause of action and the plea to the jurisdiction includes evidence, the trial court must examine the relevant evidence to determine whether a fact question exists. *Id.* If the evidence creates a fact question concerning the jurisdiction issue, the trial court cannot grant the plea to the jurisdiction. *Id.* at 227–28. "However, if the relevant evidence is undisputed or fails to raise a fact question on the jurisdictional issue, the trial court rules on the plea to the jurisdiction as a matter of law." *Id.* at 228. "[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c)." *Id.* When reviewing a plea to the jurisdiction in which the pleading requirements have been met and evidence that implicates the merits of the case has been submitted in support of the plea, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference and resolve any doubts in favor of the nonmovant. *Id.* The scheduling of a hearing on a plea to the jurisdiction is left to the sound discretion of the trial court, "which is in the best position to evaluate the appropriate time frame for hearing a plea in any particular case." *Id.* at 229.

### 2. *Whether the Galveston County Court Had Subject-Matter Jurisdiction*

The trial court granted Isa's plea to the jurisdiction, ruling, among other things, that the court lacked subject-matter jurisdiction over the Galveston County divorce

41

action. Winnie appealed the trial court's dismissal of the Galveston County divorce action. On appeal, Isa argues that the trial court's dismissal was proper, contending that the Galveston County court did not obtain jurisdiction because (1) subject-matter jurisdiction never properly attached in Galveston County due to Winnie's failure to establish residency in Galveston County and (2) Winnie could never establish jurisdiction over her claims in Galveston County as the Harris County court had made a final ruling on the merits when the associate judge issued his written report following a bench trial and the parties agreed to waive appeal to the referring district court; therefore, Winnie's subsequent non-suit of the Harris County action resulted in a dismissal with prejudice of all claims decided in that action, leaving only the final decree of divorce to be entered by the Harris County court. I agree with Isa.

a. **Failure to satisfy statutory residency requirements for divorce suit**

Family Code section 6.301 provides that "[a] suit for divorce may not be maintained in this state unless at the time the suit is filed either the petitioner or the respondent has been . . . (1) a domiciliary of this state for the preceding six-month period; and (2) a resident of the county in which the suit is filed for the preceding 90-day period." TEX. FAM. CODE ANN. § 6.301. Although this section is not jurisdictional, it controls a petitioner's right to sue for a divorce, is mandatory, and cannot be waived. *In re Milton*, 420 S.W.3d 245, 252 (Tex. App.—Houston [1st Dist.] 2013, orig.

42

proceeding); *In re Green*, 385 S.W.3d 665, 669 (Tex. App.—San Antonio 2012, orig. proceeding). Typically, when neither the petitioner nor the respondent meets the residency requirements, the trial court abates the suit so that one of them can meet the requirements. *In re Milton*, 420 S.W.3d at 252. However, when the record indicates that neither party intends to reside in the county of suit, abatement will not cure a failure to meet the residency requirements, and the proper remedy is dismissal. *Id.*; *In re Green*, 385 S.W.3d at 670.

Here, it is undisputed that Isa did not reside in Galveston County at the time suit was filed and did not intend to reside in that county. And the trial court found, among other things, that "[o]n July 19, 2016, Winnie Stacey testified that she did not reside in Galveston County 90 days before filing the April 10, 2013 petition," that "there is no credible evidence that Winnie Stacey was ever a resident of Galveston in 2013 and 2014," and that "Winnie Stacey and her counsel changed the typical pleading language as a basis for venue in divorce petitions to obscure the fact that she had no basis for venue in Galveston" at the time of filing. This Court may set aside a finding of fact only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam) (stating such with regard to jury findings); *Ferrara v. Nutt*, 555 S.W.3d 227, 235 (Tex. App.—Houston [1st Dist.] 2018, no pet.) (stating that courts review legal and factual sufficiency of evidence supporting trial court's fact findings by using same standards

to review jury verdicts). Here, that is not the case.

I would hold that jurisdiction never attached in the Galveston County trial court and that court lacked subject-matter jurisdiction to address the merits of the Galveston County divorce action. *See Gomez*, 891 S.W.2d at 245 ("As a general proposition, before a court may address the merits of any case, the court must have jurisdiction over the party or the property subject to the suit, jurisdiction over the subject matter, jurisdiction to enter the particular judgment, and capacity to act as a court."). However, because the statutory residency requirement for filing a suit for divorce is not jurisdictional, subject-matter jurisdiction theoretically *could* attach over Winnie's divorce action, reviving all of Winnie's claims against both IACL and Isa and forcing them to defend themselves again on issues of personal and subject-matter jurisdiction and venue already brought before the court in this action, all other things being equal. Thus, a ruling that jurisdiction over this divorce suit failed to attach because the parties failed to meet statutory requirements for filing a divorce action in Galveston County is not enough by itself to dispose of all of the jurisdictional issues properly raised by the parties and heard and addressed by the trial court or to dismiss the suit on a plea to the jurisdiction. *See Miranda*, 133 S.W.3d at 226–27 (stating that when pleadings do not affirmatively demonstrate incurable jurisdictional defect, plaintiff should be allowed opportunity to amend, but when pleadings affirmatively negate jurisdiction, plea to jurisdiction may be granted). Therefore, I disagree with the majority that the

44

trial court dismissed the suit on this basis, which the court did not even mention in its order dismissing the suit on Isa's plea to the jurisdiction.

### b. Effect of improper taking of non-suit on subsequent actions

In his plea to the jurisdiction, Isa asserted, among other things, that the Galveston County court lacked subject-matter jurisdiction over the suit because, when suit was filed, the Harris County court had continuing, exclusive jurisdiction over the matter and that the Harris County action had a res judicata effect, barring the Galveston County court from considering Winnie's claims. I agree.[4]

---

[4] Isa further claimed that the trial court "lack[ed] jurisdiction to issue rulings or orders that contradicted the parties' binding mediated settlement agreement" they had signed in the Montgomery County divorce action. A mediated settlement agreement is enforceable in the same manner as any other written contract. TEX. CIV. PRAC. & REM. CODE ANN. § 154.071(a) (West 2011). Moreover, a written settlement agreement may be enforced as a contract even if one party withdraws consent before judgment is entered on the agreement. *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009); *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995). Therefore, I would hold that the mediated settlement agreement in the Montgomery County action became valid and enforceable when it was signed by the parties and filed with the Montgomery County trial court. However, I would conclude that Winnie breached the agreement by her bad faith dismissal of the Montgomery County action and filing of the same divorce action in Harris County and that her prior material breach excused Isa's performance under the MSA. *See Mustang Pipeline Co. v. Driver Pipeline Co.*, 134 S.W.3d 195, 196, 198 (Tex. 2004) (per curiam); *Henry v. Masson*, 333 S.W.3d 825, 835 (Tex. App.—Houston [1st Dist.] 2010, no pet.). Isa did not continue performing under the MSA but instead retained counsel and entered an appearance in the Harris County duplicate divorce action improperly filed by Winnie, acquiesced in the associate judge's issuance of temporary orders, participated through his counsel in the trial to the associate judge, agreed to waive appeal of the associate judge's report to the referring judge, and opposed Winnie's subsequent motion asking the associate judge to modify his report to impose liability on IACL. Accordingly, both Winnie and Isa knowingly and voluntarily waived any rights accorded to them by the MSA. I would hold that the Montgomery County MSA does not affect the proper disposition

Texas Rule of Civil Procedure 162 provides that "[a]t any time before the plaintiff has introduced all of his evidence other than rebuttal evidence, the plaintiff may dismiss a case, or take a non-suit, which shall be entered in the minutes." TEX. R. CIV. P. 162; *see Villafani v. Trejo*, 251 S.W.3d 466, 468–69 (Tex. 2008) ("Under Texas law, parties have an absolute right to nonsuit their own claims for relief at any time during the litigation until they have introduced all evidence other than rebuttal evidence at trial."). A non-suit is "effective when it is filed." *Univ. of Tex. Med. Branch at Galveston v. Estate of Blackmon ex rel. Shultz*, 195 S.W.3d 98, 100 (Tex. 2006) (per curiam). "If a claim is timely nonsuited, the controversy as to that claim is extinguished, the merits become moot, and jurisdiction as to the claim is lost." *City of Dallas v. Albert*, 354 S.W.3d 368, 375 (Tex. 2011).

The Texas Supreme Court has also held, however, that a party's right to take a non-suit "cannot be used to disturb a court's judgment on the merits of a claim." *Villafani*, 251 S.W.3d at 469. In *Hyundai Motor Co. v. Alvarado*, the Texas Supreme Court addressed the effect of the plaintiffs' non-suit filed after the trial court had granted partial summary judgment in favor of the defendant on several of the plaintiffs' claims. *See* 892 S.W.2d 853, 854 (Tex. 1995) (per curiam). In *Alvarado*, the plaintiffs, who had been injured in a car accident, sued Hyundai in Webb County and alleged several theories of liability. *Id.* Hyundai moved for partial summary judgment, arguing

of this suit.

that almost all of the claims were preempted by federal law, and the trial court granted the motion. *Id.* The plaintiffs then non-suited their case in Webb County and filed suit against Hyundai in Duval County, raising identical claims as in their first petition, including the claims on which the Webb County court had granted partial summary judgment. *Id.* The Webb County court signed an order of non-suit. *Id.* Hyundai then requested the Webb County court modify that order, arguing that the plaintiffs could not refile the claims on which partial summary judgment had been granted. *Id.* The trial court agreed with Hyundai, entering an order stating that the claims adjudicated by the prior summary judgment were dismissed with prejudice. *Id.*

In addressing whether the trial court's summary judgment order survived the plaintiffs' subsequent non-suit, the Texas Supreme Court noted the general rule that plaintiffs have the right to take a non-suit at any time until they introduce all of their evidence other than rebuttal evidence and that a non-suit may have the effect of vitiating earlier interlocutory orders. *Id.* The court then stated, however, that a trial court's decisions on the merits, such as summary judgment orders and partial summary judgment orders, are not vitiated by a subsequent non-suit. *Id.* at 855. Noting that, in summary judgment practice, the plaintiff need not produce any evidence, the court reasoned that if Rule 162 governing non-suits "provided the only cut-off point after which a plaintiff could no longer take a nonsuit," then plaintiffs could essentially avoid any summary judgment ruling by requesting a non-suit after the trial court ruled on the

47

summary judgment. *Id.*

The supreme court held, "Once a judge announces a decision that adjudicates a claim, that claim is no longer subject to the plaintiff's right to nonsuit. A non-suit sought after such a judicial pronouncement results in a dismissal with prejudice as to the issues pronounced in favor of the defendant." *Id.*; *see Gen. Agents Ins. Co. of Am., Inc. v. El Naggar*, 340 S.W.3d 552, 556–57 (Tex. App.—Houston [14th Dist.] 2011, pet. denied) (stating that court's reasoning in *Alvarado* was "rooted in the doctrines of res judicata and collateral estoppel, which 'promote judicial efficiency, protect parties from multiple lawsuits, and prevent inconsistent judgments by precluding the relitigation' of matters that have already been decided") (quoting *In re Team Rocket, L.P.*, 256 S.W.3d 257, 260 (Tex. 2008) (orig. proceeding)); *Curry v. Bank of Am., N.A.*, 232 S.W.3d 345, 354 (Tex. App.—Dallas 2007, pet. denied) (stating that party who has had his claims "adjudicated unsuccessfully cannot later non-suit his claims to avoid the judgment"). The court stated, "The dismissal is with prejudice as to the issues disposed of by the summary judgment." *See Alvarado*, 892 S.W.2d at 855 (remanding case to appellate court to consider plaintiffs' argument that trial court erred in ruling that most of their claims were preempted by federal law). A similar holding should be made here.

Here, Winnie and Isa, through his former counsel, participated in a trial on the merits before the associate judge in the Harris County action on December 10, 2012.

The associate judge heard testimony from Winnie, admitted exhibits into evidence, and considered the arguments of counsel. At the end of the trial, counsel for both Winnie and Isa informed the associate judge that they had agreed to waive a de novo hearing to the referring district court judge. Winnie's counsel stated on the record in open court, "[E]verybody is waiving appeal to the referring Court . . . so that we're trying it once," and Isa's counsel responded, "That is correct, Judge. That is our agreement." This agreement was made on the record prior to the start of any hearing in the referring court.

The associate judge executed his written report on December 21, 2012, entered it on January 11, 2013, and sent it to all counsel of record. The associate judge's report addressed conservatorship of the then-minor children, payment of child support, and division of the parties' community estate. The report awarded Winnie sole managing conservatorship and Isa possessory conservatorship of the children. Among the property awarded to Isa, the associate judge awarded IACL "and its assets and liabilities" to Isa. The associate judge awarded Winnie $3.5 million against Isa, but specifically denied Winnie any recovery against IACL.

Winnie subsequently filed a request that the associate judge reconsider some of his property awards and make "additional rulings." In that motion, she requested that the associate judge reconsider his findings of no liability against IACL. She asked that a money judgment be awarded in her favor against IACL and Isa, jointly and severally.

49

Winnie asserted that Isa "hides his money within [IACL] and withdraws it at his whim," and she claimed that IACL "is used as a sham to protect [Isa] from his creditors." The associate judge denied Winnie's request on February 21, 2013, stating that "[t]he judgment in favor of [Winnie] against [Isa] includes consideration of the value of [IACL]."

On April 10, 2013, Winnie filed a notice of non-suit in the Harris County action, and on the same day she filed her original petition for divorce in the Galveston County action. The referring district judge of the Harris County court signed an "Order on Notice of Non-Suit" on April 12, 2013, dismissing the Harris County action.

I would apply the Texas Supreme Court's holding in *Alvarado* to this case in which a full trial on the merits was held before a Harris County associate judge; the parties affirmatively represented to the associate judge that they did not wish to seek a trial de novo before the referring district court; the associate judge issued a written report that resolved issues of conservatorship and property division and that awarded Winnie $3.5 million against Isa but denied her recovery against IACL; Winnie sought additional rulings from the associate judge concerning, among other things, IACL's liability to her; and, after the associate judge declined to reconsider its rulings or make any additional rulings, Winnie non-suited the Harris County action and filed an identical divorce proceeding against Isa and IACL on the same day in Galveston County.

50

I would hold that the associate judge "announce[d] a decision that adjudicate[d]" all of Winnie's claims, such that her claims were no longer subject to her right to non-suit. *See Alvarado*, 892 S.W.2d at 855; *see also* TEX. FAM. CODE ANN. § 201.007 (West Supp. 2018) (setting out powers of associate judge, including powers to conduct hearing, hearing evidence, make findings of fact, formulate conclusions of law, recommend order to be rendered, and, in certain situations, render and sign final order). The actions of Winnie and her counsel in non-suiting the Harris County action and immediately filing an identical action in Galveston County were clearly taken to avoid the associate judge's rulings following a trial on the merits which, although awarding Winnie $3.5 million against Isa, awarded her no recovery against IACL. I would therefore hold that Winnie's subsequent non-suit of the Harris County action resulted in a dismissal of the action with prejudice to its refiling in another county. *See Alvarado*, 892 S.W.2d at 855 ("The dismissal is with prejudice as to the issues disposed of by the summary judgment.").

The only remaining question is what, if anything, is left to be adjudicated in the Harris County divorce action.

In 2007, the Texas Legislature amended Family Code section 201.007. That section, as amended, permitted an associate judge to sign a final order including a waiver of de novo appeal to the referring court as authorized by section 201.015 of the Code, but it did not expressly state that the associate judge had authority to render a

51

decision. Thus, at the time of the parties' hearing before the Harris County associate judge, Family Code section 201.007(a)(16) allowed an associate judge to "sign a final order that includes a waiver of the right of appeal [for a trial de novo before the referring district court] pursuant to Section 201.015." Act of May 25, 2007, 80th Leg., R.S., ch. 839, § 1, 2007 Tex. Gen. Laws 1748, 1749 (amended 2017) (current version at TEX. FAM. CODE ANN. § 201.007(a)); *see also* Act of May 23, 2007, 80th Leg., R.S., ch. 1235, § 7, 2007 Tex. Gen. Laws 4150, 4152 (amended 2015) (current version at TEX. FAM. CODE ANN. § 201.015(a), (g)) (providing that, after hearing before associate judge, party may request de novo hearing before referring court, but also providing that parties may waive right to de novo hearing).

In 2017, however, following a decision of this Court holding that under Family Code section 201.007, as amended in June 2007, an associate judge of a family court had the power to sign a final order but not to render a final decision,[5] the Texas Legislature again amended section 201.007 to make clear that associate judges had had such power at all times subsequent to the addition of new subsection 201.007(a)(16) in June 2007.

Current section 201.007(e), effective September 2017, clarifies the intent of the Legislature in amending section 201.007 in 2007. It provides, "An order signed before

---

[5]     *See Gerke v. Kantara*, 492 S.W.3d 791, 792–95 (Tex. App.—Houston [1st Dist.] 2016, no pet.).

May 1, 2017, by an associate judge under Subsection (a)(16) is a final order rendered as of the date the order was signed." TEX. FAM. CODE ANN. § 201.007(e).

Here, the parties agreed on the record in open court at the end of the trial before the Harris County associate judge to waive a de novo hearing before the referring court. The associate judge adjudicated all issues in the case but erroneously informed the parties that only the referring court could grant the divorce by signing the decree. The associate judge subsequently signed and filed his final report on December 21, 2012. Under section 201.007(e), that final report constituted a final order of the referring court. *See id.* Winnie then filed a motion for additional findings, which the associate judge denied on February 21, 2013. Only after failing to get a favorable ruling on this motion did Winnie file a non-suit in the Harris County district court and immediately file a new divorce action in Galveston County. That suit was improperly filed.

The majority opines that the associate judge's final report did not satisfy the requirements of a final order under section 201.007(a)(16) and also did not contain a written waiver of appeal to the trial court entered prior to "a hearing" before the associate judge. I respectfully disagree. I would hold that the final report issued by the associate judge substantially complied with the requirements of section 201.007(a)(16) by disposing of all issues before the trial court. And I would further hold that, even if the parties' agreement to waive trial de novo to the referring judge did not meet the

53

technical requirements of section 201.007(a) by being entered "before the start of a hearing," trial de novo was waived "on the record," as permitted by Family Code section 201.015(g). *See* Act of May 23, 2007, 80th Leg., R.S., ch. 1235, § 7, 2007 Tex. Gen. Laws 4150, 4152 ("Before the start of a hearing by an associate judge, the parties may waive the right of a de novo hearing before the referring court in writing *or on the record*.") (emphasis added). Furthermore, the parties' agreement to waive that de novo hearing complied with the requirements of an agreement of counsel under Texas Rule of Civil Procedure 11 and was therefore enforceable. *See* TEX. R. CIV. P. 11 (providing that no agreement between counsel will be enforced unless it is in writing, signed, and filed with papers of court as part of record, or "unless it be made in open court and entered of record"). Moreover, while the appellate record is silent as to whether a hearing was held before the associate judge denied Winnie's request for additional findings of fact and conclusions of law in February 2013 after entering its final report in December 2012, there is no question that both Isa and Winnie understood the rulings of the associate judge disposing of all the issues in the case to be final and were awaiting only the entry of a final decree of divorce on those rulings, which the associate judge mistakenly believed only the referring court could enter, when Winnie non-suited the entire divorce suit.

I would hold that the parties waived de novo appeal to the referring court as to any of the issues adjudicated by the associate judge. Accordingly, the associate judge's

54

final order constituted a final order of the referring court that became effective as of the date of the associate judge's final order. I would hold that subject-matter jurisdiction never attached to this Galveston County action for divorce because of Winnie's failure to satisfy statutory residency requirements. And I would further hold that subject-matter jurisdiction over the merits of this divorce suit could never properly be established in Galveston County because of Winnie's non-suit of her Harris County action after the Harris County associate judge had heard the merits and rendered its final order and post-order rulings. This non-suit was plainly designed to thwart the referring Harris County court's entry of a final decree of divorce incorporating the associate judge's final report.

I agree with the Texas Supreme Court's ruling in *Hyundai v. Alvarado* requiring dismissal with prejudice of all issues decided by the associate judge prior to improper non-suit, preventing their refiling in another county. *See Alvarado*, 892 S.W.2d at 855 ("The dismissal is with prejudice as to the issues disposed of by the summary judgment."). Under the circumstances of this case, I would likewise dismiss with prejudice in Galveston County all issues decided by the associate judge's final order in the Harris County divorce action. Concluding that the associate judge's final order was not final in the Harris County action because Winnie's non-suit caused the decree of divorce not to be signed by the referring court, I would remand the case to the Galveston County court and direct that court to transfer the case to Harris County, the

55

county of proper jurisdiction and venue, for entry of the decree of divorce. *In re Milton*, 420 S.W.3d at 254 (directing trial court to transfer divorce case from county where residency was not established to county having both jurisdiction and venue).

## C. Whether the Galveston County Court Had Personal Jurisdiction over Isa and IACL

Because I would sustain the trial court's dismissal of this case for lack of subject-matter jurisdiction and would remand this case for transfer to the Harris County district court for entry of a decree of divorce incorporating the associate judge's final order, I would not find it necessary to address the trial court's ruling that it lacked personal jurisdiction over both Isa and IACL. However, even if I did not find that the Galveston County trial court lacked subject-matter jurisdiction over this suit for divorce, I would hold that the Galveston County court correctly ruled that it lacked personal jurisdiction over both Isa and IACL, and I would affirm its vacatur of the default judgments against Isa and IACL for lack of personal jurisdiction.[6]

### 1. Standard of Review of Personal Jurisdiction

Texas courts may only exercise *in personam* jurisdiction over nonresidents if

---

[6] I address the issue of personal jurisdiction primarily because the majority's representation of the record and analysis of the applicable law on both subject-matter and personal jurisdiction leave the issue of the proper forum in which to resolve this case and the issue of personal jurisdiction over both litigants open for future litigation in multiple forums, violating Rule of Appellate Procedure 47.1. *See* TEX. R. APP. P. 47.1 (requiring court of appeals to address every issue necessary for final disposition of appeal).

(1) the Texas long-arm statute authorizes the exercise of jurisdiction, and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *See Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *Glob. Paragon Dallas, LLC v. SBM Realty*, *LLC*, 448 S.W.3d 607, 611 (Tex. App.—Houston [14th Dist.] 2014, no pet.). "Personal jurisdiction is composed of two elements: (1) the defendant must be amenable to the jurisdiction of the court; and (2) if the defendant is amenable to the jurisdiction of the court, the plaintiff must validly invoke that jurisdiction by valid service of process on the defendant." *Kawasaki Steel Corp. v. Middleton*, 699 S.W.2d 199, 200 (Tex. 1985) (per curiam); *Velasco v. Ayala*, 312 S.W.3d 783, 798 (Tex. App.—Houston [1st Dist.] 2009, no pet.); *Furst v. Smith*, 176 S.W.3d 864, 868 (Tex. App.—Houston [1st Dist.] 2005, no pet.).

"A Texas court may assert personal jurisdiction over a nonresident defendant only if the requirements of both the Fourteenth Amendment's due process clause and the Texas long-arm statute are satisfied." *Silbaugh v. Ramirez*, 126 S.W.3d 88, 95 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *see Kawasaki Steel*, 699 S.W.2d at 200 (stating that Texas long-arm statute "reaches as far as the federal constitutional requirements of due process will permit"). The exercise of personal jurisdiction by a Texas court is proper when the nonresident defendant has established minimum contacts with Texas, and the exercise of jurisdiction comports with "traditional notions of fair play and substantial justice." *Moki Mac River Expeditions*, 221 S.W.3d at 575

(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). For purposes of due process, "[a] defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 1240 (1958)).

The validity of issuance, service, or return of citation is not presumed. *See Velasco*, 312 S.W.3d at 797 (citing *Amato v. Hernandez*, 981 S.W.2d 947, 949 (Tex. App.—Houston [1st Dist.] 1998, pet. denied)). "If the record does not show strict compliance with the rules regarding service of citation, then service was invalid and the judgment is void." *Id.* "Strict compliance" means literal compliance with the rules governing issuance, service, and citation. *Id.* An incorrect name is sufficient to show a citation is not in strict compliance with the rules. *Id.*; *Medeles v. Nunez*, 923 S.W.2d 659, 662–63 (Tex. App.—Houston [1st Dist.] 1996, writ denied) (concluding that citation was invalid because it named "Maria Mendeles," rather than "Maria Medeles," as defendant), *overruled on other grounds by Barker CATV Constr. Inc. v. Ampro Inc.*, 989 S.W.2d 789 (Tex. App.—Houston [1st Dist.] 1999, no pet.).

To support a default judgment upon substituted service, as here, two requirements must be met: "(1) the pleadings must allege facts that, if true, would

58

make the defendant amenable to process by the use of the long-arm statute; and (2) there must be proof in the record that the defendant was in fact served in the manner required by statute." *Comm'n of Contracts of Gen. Exec. Comm. of Petroleum Workers Union of Republic of Mex. v. Arriba, Ltd.*, 882 S.W.2d 576, 585 (Tex. App.—Houston [1st Dist.] 1994, no writ) (citing *Capitol Brick, Inc. v. Fleming Mfg. Co.*, 722 S.W.2d 399, 401 (Tex. 1986)); *Whitney v. L & L Realty Corp.*, 500 S.W.2d 94, 95–96 (Tex. 1973) (holding that, in cases involving substituted service on Texas Secretary of State, record must contain showing that Secretary of State forwarded copy of process to defendant to establish personal jurisdiction over defendant).

The plaintiff bears the initial burden to plead sufficient allegations to bring a nonresident defendant within the reach of Texas's long arm statute. *Moki Mac River Expeditions*, 221 S.W.3d at 574. If the plaintiff has pleaded sufficient jurisdictional allegations, the defendant assumes the burden of negating all bases for jurisdiction. *BMC Software Belg., N.V. v. Marchand*, 83 S.W.3d 789, 793 (Tex. 2002). "Because the plaintiff defines the scope and nature of the lawsuit, the defendant's corresponding burden to negate jurisdiction is tied to the allegations in the plaintiff's pleading." *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 658 (Tex. 2010). But if the plaintiff fails to plead facts sufficient to bring the defendant within reach of the Texas long-arm statute, the defendant must only prove that it does

not reside in Texas to negate jurisdiction. *Id.* at 658–59.

Whether a court has personal jurisdiction over a defendant is a question of law that appellate courts review de novo. *Moki Mac River Expeditions*, 221 S.W.3d at 574. Appellate courts review the trial court's factual findings for legal and factual sufficiency and review the trial court's legal conclusions de novo. *BMC Software*, 83 S.W.3d at 794. The court may set aside a finding of fact only if the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *Cain*, 709 S.W.2d at 176. When there is a legal sufficiency challenge, if there is more than a scintilla of evidence to support the questioned finding, the no-evidence point fails. *BMC Software*, 83 S.W.3d at 795. "If findings of fact are not challenged, they are binding on the parties and on this Court." *In re K.R.P.*, 80 S.W.3d 669, 673 (Tex. App.—Houston [1st Dist.] 2002, pet. denied); *see also Botter v. Am. Dental Ass'n*, 124 S.W.3d 856, 860 n.1 (Tex. App.—Austin 2003, no pet.) ("When a court issues findings of fact we are to assume that they are valid unless they are challenged by the appellant . . . .").

"[A] judgment entered without notice or service is constitutionally infirm," and some form of attack must be available when defects in personal jurisdiction violate due process. *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 84, 108 S. Ct. 896, 899 (1988). A complete failure of service deprives a litigant of due process and a trial court of personal jurisdiction; the resulting judgment is void and may be

challenged at any time. *In re E.R.*, 385 S.W.3d 552, 566 (Tex. 2012); *see Peralta*, 485 U.S. at 84, 108 S. Ct. at 899 ("Failure to give notice violates 'the most rudimentary demands of due process of law.'") (quoting *Armstrong v. Manzo*, 380 U.S. 545, 550, 85 S. Ct. 1187, 1190 (1965)). "[A] judgment may also be challenged through a collateral attack when a failure to establish personal jurisdiction violates due process." *PNS Stores, Inc. v. Rivera*, 379 S.W.3d 267, 273 (Tex. 2012).

Texas Rule of Civil Procedure 107 prohibits a default judgment until proof of service has been on file for ten days. TEX. R. CIV. P. 107(h). In cases involving substituted service on the Texas Secretary of State, the proof of service that is filed at least ten days before a default judgment must include a *Whitney* certificate reflecting that the Secretary of State forwarded citation and process to the defendant. *MC Phase II Owner, LLC v. TI Shopping Ctr., LLC*, 477 S.W.3d 489, 492–93 (Tex. App.—Amarillo 2015, no pet.) (recognizing continued viability of *Whitney* and its certificate requirement).

### 2. *The Galveston County Court's Lack of Personal Jurisdiction over Isa*

In his motion for new trial, Isa asserted that service of process on him by publication was ineffective. He claimed that Winnie did not use reasonable diligence to locate him for service. Isa asserted that Winnie lied to the trial court in her affidavit supporting substituted service when she testified that she did not know Isa's location or how to find him.

Winnie has consistently taken the position that Isa left the United States permanently in April 2012. Although she had an address in Bahrain—IACL's headquarters—with which to serve Isa, his email address, and other means to communicate with him—including through the attorney who represented Isa in the Harris County action, which Winnie non-suited the same day she filed the Galveston County action—Winnie requested leave to serve Isa by publishing a notice in a Galveston newspaper.

The Galveston County court found, in its findings of fact issued following the sanctions hearing—none of which Winnie challenges on appeal—that Winnie had a physical address where Isa or IACL could likely be reached, knew how to contact Isa and his family in Bahrain, and continued to write emails to him after filing the Galveston County action, but she never informed him of the Galveston lawsuit. The court found that, instead, Winnie swore in two affidavits that "she did not know how to contact Isa . . . when in fact she and her attorneys knew that Isa was represented by an attorney in the Harris County action on the very day" that she filed the Galveston County action and served Isa's attorney with a notice of non-suit for the Harris County action. The court also found that, despite Winnie's affidavit testimony that she did not know how to get in touch with Isa and her testimony during the June 2014 default hearing that their children had been "cut off" and that she did not have a way to contact Isa after he left the United States, Winnie knew the children had

been communicating with Isa, she knew that her children had made trips to visit him out of the country, and she had facilitated one of the trips that her youngest son, who was a minor at the time, took to see Isa while the Galveston County action was pending. Winnie, however, did not give Isa actual notice of the Galveston County action prior to the June 2014 default hearing.

The Texas Supreme Court recently addressed the adequacy of notice by publication in *In re E.R.* After discussing cases from the United States Supreme Court concerning notice by publication, the Texas Supreme Court summarized these decisions by stating, "[W]hen a defendant's identity is known, service by publication is generally inadequate." *In re E.R.*, 385 S.W.3d at 560. The court further noted that notice by publication, which was already "constitutionally suspect" in the mid-twentieth century, "is even more vulnerable today given the precipitous decline in newspaper readership." *Id.* at 561. "[S]ervice by publication should be a last resort, not an expedient replacement for personal service." *Id.* When it is both "possible and practicable to more adequately warn" a defendant of a pending lawsuit, especially one concerning a parent's relationship with his minor child, notice by publication is constitutionally inadequate. *Id.* at 566; *see Jones v. Flowers*, 547 U.S. 220, 237, 126 S. Ct. 1708, 1720 (2006) (stating that "chance alone" brings person's attention to advertisement in newspaper and notice by publication is adequate only where "it is not reasonably possible or practical to give more adequate warning") (quoting *Mullane v.*

*Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 315, 317, 70 S. Ct. 652, 658 (1950)).

I agree with Isa that, in the Galveston County action, Winnie used notice by publication "as a first resort," not as a last resort, and that her request to publish notice in the *Galveston County Daily News* when she knew that Isa did not live in the United States and when she had several methods for getting in contact with him at her disposal was "reasonably calculated to avoid actual notice to Isa." Because it was both possible and practicable for Winnie to have given Isa notice of the filing of her suit in Galveston County, and she did not do so, I would hold that service on Isa was constitutionally ineffective and the trial court properly concluded that it lacked personal jurisdiction over Isa.

### 3. *Lack of Personal Jurisdiction over IACL*

IACL also claimed that it was not properly served with process. It raised this claim in its separately filed June 30, 2016 bill-of-review action seeking to overturn the divorce decree and orders issued in this action by default, which was docketed in the same Galveston County court under a separate cause number. IACL claimed that service through the Texas Secretary of State's Office was not effective because Winnie had provided an incorrect address for IACL. In its bill-of-review petition, IACL also claimed that it was not amenable to process because it lacked sufficient minimum contacts with Texas to be sued in this forum and Winnie failed to plead jurisdictional facts to support a finding that IACL purposefully availed itself of doing business in

Texas.

Winnie's divorce petitions in the Galveston County action did not allege any specific act or transaction performed by IACL in Texas. Instead, with respect to IACL's activities in Texas, the petitions only alleged that IACL "attempt[ed] to form" an entity called "Intercol USA" as a subsidiary and that a company called "Exit Lone Star Realty" was formed as a Texas subsidiary of IACL. The Galveston County court specifically found that these allegations were false.

The Galveston County court also found that the only documentary evidence linking IACL to Texas was a bill of lading entered into evidence at the default hearing. Although Winnie had offered this document as evidence that IACL was doing business in Texas—and thus possessed sufficient minimum contacts with Texas to support personal jurisdiction—Winnie later acknowledged during the July 2016 hearing that the bill of lading related to a gift that Isa had shipped from Bahrain to K.A., their eldest son. The court found that Winnie offered no evidence that any company formed or doing business in Texas during her marriage to Isa "either (i) [was] a subsidiary of IACL, (ii) was controlled by IACL, (iii) was going business through IACL, or (iv) was doing business with IACL in Texas." The court therefore found that Winnie had knowingly pleaded facts without a good faith basis "for the improper purpose of falsely invoking jurisdiction over IACL in Texas."

Winnie does not challenge the sufficiency of the evidence supporting the

Galveston County court's findings of facts. I would hold that the Galveston County court's findings are fully supported by the record on appeal and that Winnie produced no evidence that IACL ever purposefully availed itself of the privilege of doing business in Texas or established sufficient minimum contacts with Texas. *See Retamco Operating*, 278 S.W.3d at 338 ("A defendant establishes minimum contacts with a state when it 'purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'").

IACL also argues that, as with Isa, Winnie failed to properly serve it with process, thus depriving the Galveston County court of personal jurisdiction over it. As IACL points out, Winnie attempted to serve it by means of substituted service on the Texas Secretary of State. The record contains the return of service which indicated that the citation was sent by the Galveston County Clerk to the Secretary of State on June 24, 2013.

Rule of Civil Procedure 108a governs service of process in foreign countries and allows for the usage of several methods of service. *See* TEX. R. CIV. P. 108a(1). The Rule requires that the method used "must be reasonably calculated, under all of the circumstances, to give actual notice of the proceedings . . . in time to answer and defend." *Id.*

The correct address for Abdul Rahman Alwazzan—Isa's older brother and a director of IACL—is at 131 Al-Khalifa Avenue, P. O. Box 584, in Manama, Kingdom

of Bahrain. Winnie, however, attempted service by using an address that did not use the Post Office box number. Using this incorrect address would not have resulted in service, and, thus, the method of service that Winnie used was not "reasonably calculated" to give IACL "actual notice of the proceedings . . . in time to answer and defend" the Galveston County action. *See id.*

For the forgoing reasons, I would hold that the Galveston County court failed to obtain personal jurisdiction over IACL because, in addition to the complete lack of evidence of a connection between IACL and the State of Texas, IACL had not been served with process and IACL therefore lacked constitutionally required notice of the Galveston County action when default judgment was entered against it, in violation of its due process rights under the Fourteenth Amendment to the United States Constitution. I would further hold that the default judgment of the Galveston County trial court against it is void for this reason. *See In re E.R.*, 385 S.W.3d at 566 (holding that complete failure of service deprives litigant of due process and trial court of personal jurisdiction; resulting judgment is void and may be challenged at any time).

## IV. Conclusion

I would hold that the Galveston County court did not err when it concluded that it lacked both subject-matter jurisdiction over this divorce action and personal jurisdiction over both Isa and IACL, and granted Isa's plea to the jurisdiction. I would affirm the judgment of the trial court granting Isa's plea to the jurisdiction, awarding sanctions against Winnie, and vacating all other orders of that court. I would further hold that the Harris County associate judge's December 21, 2012 report constituted a valid final order of the Harris County district court, and I would transfer this case to the Harris County court for entry of the final order of the Harris County associate judge's December 21, 2012 final order as the decree of divorce in this case.

Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes and Higley.

Justice Keyes, dissenting.

68